## ARKANSAS INSURANCE COMPANY *v.* McMANUS.

### Opinion delivered April 20, 1908.

1. FIRE INSURANCE—PRESERVATION OF INVENTORY.—Under a fire insurance policy which stipulated that "the asssured shall take a complete itemized inventory of stock at least once in each calendar year, and, unless such an inventory has been taken in detail within twelve months prior to the date thereof, one shall be taken in detail within thirty days after date hereof," and that he shall keep the last preceding inventory, if such has been taken, in a fire-proof safe, a policy was not avoided by assured's failure to preserve a partial inventory taken before the policy was issued if he took a complete inventory within the required time and kept it in a fire-proof safe. (Page 118.)

2.  SAME—KEEPING MERCHANDISE ACCOUNT.—Where a merchant holding a fire insurance policy kept an account which shows the amount of his sales and inventory taken at the time of the issuance of the policy and the invoices of goods subsequently purchased, he will be held to have substantially complied with a requirement of the policy that he keep a merchandise account. (Page 118.)

3.  SAME—SUFFICIENCY OF OWNERSHIP OF PROPERTY INSURED.—Under a provision in a policy of fire insurance that it shall be void "if the interest of the assured be other than unconditional and sole ownership, both legal and equitable, or if the subject of the insurance be upon ground not owned by the assured in fee simple," the title of an equitable owner is sufficient where he is in actual possession and is entitled to a deed conveying the legal title. (Page 119.)

4.  SAME—VALIDITY OF PENALTY FOR NON-PAYMENT OF POLICY.—The act of March 29, 1905, providing that in all cases where loss occurs, and the fire, life, health or accident insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay to the holder of such policy, in addition to the amount of loss, twelve per cent. damages upon the amount of such loss, together with all reasonable attorneys' fees" (Acts 1905, p. 307), is not an arbitrary and unjust classification of insurance companies, but is a valid exercise of the State's police power. (Page 120.)

Appeal from Calhoun Circuit Court; *George W. Hays,* Judge; affirmed.

*C. S. Collins,* for appellant.

1. The court erred in treating the inventory of October 16th as a substantial compliance with the terms, conditions and warranties of the contract. It was no compliance at all with the plain letter and spirit of the contract. The promises to keep certain books, inventories, invoices, etc., were by the terms of the application and policy made warranties. 102 S. W. 195. The iron safe clause is valid, and compliance with its conditions indispensable to recovery. 61 Ark. 207; 62 Ark. 43; 65 Ark. 240; 31 S. W. 321; 33 S. W. 554; 78 Am. St. Rep. 216. Where there has been no compliance at all, there can be no substantial compliance, and here there is no pretense that the inventory contracted for the application, that of June 1st, was preserved. In the absence of proof of a custom to that effect, keeping a sales book showing daily cash sales in the aggregate is no substantial

compliance with the contract to keep a merchandise account. 58 Ark. 573; 53 Ark. 353; 65 Ark. 248.

2. The policy was void for want of legal title in the appellee, whereas under the policy he was required to have both the legal and equitable title. 71 Ark. 292.

*Smead & Powell,* for appellee.

1. The inventory of October 16th, taken by appellee in the belief that it was necessary in order fully to comply with the requirements of the policy, part of the previously taken inventory having been lost, was a substantial compliance with the policy. 79 Ark. 160-4; *Id.* 266.

2. If the testimony of appellee is true, and it is not disputed, he is the "sole, unconditional and fee simple owner" of the land on which the building was located. There is certainly a sufficient showing of title, coupled with possession to support a recovery. Ostrander on Fire Insurance, § 72, p. 234; 29 Fed. 496; 16 Am. Eng. Enc. of L., (2 Ed.) 931.

McCULLOCH, J. This is an action instituted by the appellee, J. W. McManus, against the Arkansas Insurance Company to recover the amount of a policy of fire insurance upon a store house and stock of merchandise. The complaint alleges that the property insured was totally destroyed by fire, and that appellant had refused to pay the amount of the policy. The appellant, in its answer, set forth the defense that the assured had failed to comply with the iron-safe clause by preserving his last preceding inventory, taken on June 1, 1905, and by failing to keep a cash-book and merchandise account as required by that clause. By an amendment to its answer, it set forth an alleged breach of one of the conditions of the policy which provided that the entire policy should be void "if the interest of the assured be other than unconditional and sole ownership, both legal and equitable, or if the subject of the insurance be upon ground not owned by the assured in fee simple."

The application for insurance contained a statement that an inventory had been taken on June 1, 1905. The policy, which was dated October 13, 1905, contained the following clause: "The assured shall take a complete itemized inventory of stock at least once in each calendar year, and, unless such an in-

ventory has been taken in detail within twelve months prior to the date hereof, one shall be taken in detail within thirty days after the date hereof, or this policy shall be null and void from this date." Another clause of the policy required the assured to keep his books "and also the last preceding inventory, if such has been taken," in a fire-proof safe.

Appellee testified that he received the policy on October 16, 1905; that he immediately discovered that several pages of the preceding inventory had been destroyed or lost, and that he at once proceeded to take a new inventory, showing the stock on hand to be $1,244.59, which he preserved and produced at the trial. He admitted that he did not preserve the parts of the inventory taken in June preceding, and that the same was burned in the fire.

It is contended on behalf of appellant that the failure to preserve the partially destroyed inventory of June, 1905, was a violation of the terms of the policy. We do not so regard it. The requirements of the policy must be tested according to the facts as they existed at the time of the issuance of the policy, which contained the conditions quoted above. The effect of these conditions was to require the preservation of the inventory then in existence, and, if there was no inventory then in existence, that one should be taken within thirty days and preserved. This clearly had reference to a perfect and complete inventory, and not to an incomplete one or one which had been partially destroyed. There was no obligation on the part of the assured to preserve an incomplete inventory; but it was obligatory upon him, from the conditions of the policy, that, if he did not then have a complete inventory, he should take one within thirty days. If he had failed to take a complete inventory within thirty days from the date of the policy, the fact that he had on hand an incomplete inventory would not have been a compliance with the policy. It follows, therefore, that the taking of a new inventory, when the preceding one was found to be incomplete, was a sufficient compliance with the terms of the policy. Certainly, the assured was not required to preserve an incomplete preceding inventory and also to take a new one within thirty days.

The contention of the appellant that the terms of the policy were violated by failure to keep an itemized account of his daily

cash sales is disposed of in the recent case of *Arkansas Mut. Fire Ins. Co.* v. *Stuckey,* 85 Ark. 33, and need not be further discussed. The proof in this case shows that the daily cash sales were entered on the books.

A violation of the policy is also contended for on the ground that the assured failed to keep a merchandise account in that particular form on his books. The account, however, does show the amount of his sales, and the inventory taken at the time of the issuance of the policy and the invoices of goods purchased since then were preserved, and it is a complete account. The purpose of a merchandise account is to show the amount of goods purchased and sold, so that the amount on hand may be ascertained. Where an account shows the amount of goods sold, and the invoices are preserved which show the amount of goods purchased, all that is required in keeping such an account is fully accomplished. The statutes of this State require that the terms and conditions of an insurance policy need only be substantially complied with. Under the statutes, therefore, it is necessary to look only to the substance, and not to the particular form, of the account kept. If the account is substantially in such form that the amount of goods on hand may be reasonably ascertained, that is all that is required.

The evidence adduced at the trial shows that the store house covered by the policy was situated upon ground which had been given to appellee. by his father, but which had not been conveyed to him by deed. He testified that his father gave him the land and promised to make him a deed, and that he built the house. He testified further that he had exclusive possession of the property since his father gave it to him, and that the failure to make the deed was the result only of carelessness. The question arises then, whether or not this is a sufficient compliance with the term of the policy. It is well settled by authority that conditions in insurance policies that the assured shall have "unconditional and sole ownership" of the property insured, or that he shall have "the title in fee simple," are complied with by showing that the assured has the equitable title. It is held in many cases that possession under a contract to convey is "unconditional and sole ownership," and also that it is "title in fee simple," within the meaning of that requirement of the policy.

2 Cooley's Briefs on Insurance, pp. 1354, 1376; Ostrander on Insurance, § 72. It was so held as to a parol contract to convey. *Milwaukee Mechanics' Ins. Co.* v. *Rhea,* 123 Fed. 9. And the same doctrine must necessarily prevail as to possession under a parol promise to convey as a gift, where valuable improvements have been made by the donee upon faith of the promise.

We find no cases involving the construction of a policy which contains the exact language of the policy in this case, wherein it is stated that the interest of the assured must be "unconditional and sole ownership, both legal and equitable." But it follows from the authorities just cited that the same rule should apply to the construction of these terms of this policy. The equitable title, coupled with actual possession, bears with it all the incidents of legal title. This constitutes in effect the legal title for all practical purposes. Under such a title, the possessor may defend his possession at law as well as in equity. Equitable title, coupled with actual possession, may be the basis of a defense in a suit at law. *Daniel* v. *Garner,* 71 Ark. 484. And it is sufficient upon which a suit against a trespasser may be based.

The language of an insurance policy is the language of the insurer, and must be most strongly construed against the insurer. The particular terms used in the policy must be construed according to their ordinary meaning and acceptation. Therefore, the title of an equitable owner who is in actual possession and is entitled to a deed conveying the legal title must be construed as "sole ownership, both legal and equitable." It is such to all intents and purposes, and it would be unreasonable to construe it otherwise.

There is no error in the record as to the amount of liability under the policy, and the judgment must be affirmed.

The court assessed a penalty against appellant pursuant to the statute enacted by the Legislature at the 1905 session, the constitutionality of which is questioned. The statute is as follows:

"In all cases where loss occurs, and the fire, life, health or accident insurance company liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such company shall be liable to pay to the holder of

such policy, in addition to the amount of loss, twelve per cent. damages upon the amount of such loss, together with all reasonable attorney's fees for- the prosecution and collection of said loss; said attorneys' ·fees to be taxed by the· court where the same is heard on original action, by appeal or otherwise, and to be taxed up as a part of the costs therein and collected as costs are or may be by the law collected." Acts 1905, p. 307.

A statute in this precise form, except that it omitted fire and accident insurance and applied only to life and health insurance, was enacted by the Texas Legislature, and its constitutionality was upheld by the Texas courts (*Union Central Life Ins. Co.* v. *Chowning,* 86 Tex. 654; *N. Y. Life Ins. Co.* v. *Orlopp,* 61 S. W. 336); by the United States Circuit Court of Appeals for the Fifth Circuit (*Merchants' Life Assn.* v. *Yoakum,* 98 Fed. 251); and by the Supreme Court of the United States (*Fidelity Mut. Life Assn.* v. *Mettler,* 185 U. S. 308; *Iowa Life Ins. Co.* v. *Lewis,* 187 U. S. 335). The Texas courts held that the statute could be sustained as a proper exercise of the police power of the State, and the Circuit Court of Appeals seems to have based its conclusion on the same ground, as the opinion quotes at length from the opinion in *Atchison, T. & S. F. Rd. Co.* v. *Matthews,* 174 U. S. 96, upholding, as a proper exercise of the police power, a statute of the State of Kansas relating to the liability of railroads for damages by fire and providing that in all actions against railroad companies to recover such damages the plaintiff may recover a reasonable attorney's fee as a part of the judgment.

The Supreme Court of the United States, in the Mettler case, sustained the Texas statute on the ground that it constituted one of the conditions upon which insurance corporations were permitted to do business in the State; and the court also held that it was not an arbitrary and unjust classification against the corporations doing life and health insurance business so as to amount to a denial to those corporations of the equal protection of the laws, which is guarantied by the Fourteenth Amendment to the Constitution.

The statute now under consideration could, under the reasoning of these cases, be sustained upon either of the grounds stated.

A Nebraska statute provides that in actions on insurance policies, in cases of total loss by fire, "the court, in rendering judgment against an insurance company upon any such policies of insurance, shall allow the plaintiff a reasonable sum as an attorney's fee, to be taxed as part of the costs." The Supreme Court of that State, in a line of decisions, has upheld the statute as a valid exercise of police power. *Farmers' Mutual Ins. Co. v. Cole,* 93 N. W. 730; *Lancashire Ins. Co. v. Bush,* 60 Neb. 116; *Farmers' & Merchants' Ins. Co. v. Dobney,* 62 Neb. 213.

And the Supreme Court of the United States in *Farmers' & Merchants' Ins. Co. v. Dobney,* 189 U. S. 301, following the doctrine of the Mettler case, and affirming the decision of the Supreme Court of Nebraska, also upheld the statute. In the Dobney case the line of reasoning would seem to indicate that the court meant to uphold the Nebraska statute as a police regulation, though it is not expressly so stated in the opinion.

The Supreme Court of Kansas upheld a similar statute in *British America Ins. Co. v. Bradford,* 60 Kan. 82. In the opinion in that case by Chief Justice Doster, the court said: "Fire insurance has come to be a business public in its nature. It has come to be 'clothed with a public interest,' and is therefore properly a subject of legislative regulation. The State is interested in the preservation of the property of its citizens, that the general values of the commonwealth may not be impaired. Especially is it interested in the preservation of its homes and their rebuilding when destroyed. To the end that insurance companies may be compelled to respect the obligations voluntarily taken upon themselves to subserve the policies of the State in these respects, the Legislature may rightfully impose upon them the repayment to insurers of attorneys' fees necessarily incurred in suits to make good their delinquencies. To do so is no violation of the Fourteenth Amendment declaring that 'no State shall deny to any person within its jurisdiction the equal protection of the law.' "

The Supreme Court of Florida has upheld a statute of that State authorizing the recovery of reasonable attorney's fee against life and fire insurance companies in suits upon policies. *Tillis v. Liverpool, etc., Ins. Co.,* 35 So. 171; *Hartford Fire Ins. Co. v. Redding,* 37 So. 62.

The statutes of Tennessee prescribe that in suits on insurance policies a penalty of twenty-five per cent. of the amount of the loss may be imposed upon a losing defendant when the refusal to pay was not made in good faith, or upon a losing plaintiff when it appears to the court that the bringing of the suit was not in good faith. The Supreme Court upheld the statute as a police regulation. *Continental Fire Ins. Co.* v. *Whitaker,* 112 Tenn. 151, 79 S. W. 119. The court, speaking through Judge Neil, said: "It seems clear that there is a sufficient difference between insurance contracts and others to authorize the provisions of the statute. No one would carry insurance except for the indemnity that contracts of this character provide. The burden is a heavy one, and an enormous tax upon individual incomes and upon the whole country as well. This heavy sacrifice is endured through long series of years, with the just expectation that upon the maturity of the contract insurance companies will promptly and honestly comply with their agreement to pay the indemnity; and this payment is usually of very great importance to policy holders, not only in the respect of the amount involved, but also in the promptness of the payment. The maturity of these contracts most generally arrives when the beneficiaries of them are in dire need. A man's dwelling house has been destroyed, and he has no means of providing shelter for his family. His storehouse and goods have been consumed by fire, and his business is ruined unless he can promptly recover his insurance. The head of a family dies, and his widow and little ones are left without the means of support, unless they can promptly obtain the relief which the husband and father provided for them through long years of toil and sacrifice in paying insurance premiums. When people, under such conditions, are met by heartbreaking delays, * * * it is neither unconstitutional nor improper from any point of view, that the Legislature should pass a law, one of the purposes of which is to protect the policyholder from the expenses so made necessary by the action of the insurance company when it shall be made to appear that the defense is not made in good faith."

The following cases, we think, announce the same principle, though they are based upon different kinds of statutes. *Atchison, Topeka & S. F. Rd.* v. *Matthews,* 174 U. S. 96; *Seaboard*

*Air Line Ry. Co.* v. *Seegers,* 207 U. S. 73; *Duckwall* v. *Jones,* 156 Ind. 685.

The case of *Seaboard Air Line Ry. Co.* v. *Seegers, supra,* is an instructive one on the subject. A statute of South Carolina provides that every claim for loss or damage to property while in the possession of a common carrier shall be adjusted and paid within forty days, and that a carrier failing to adjust and pay such claim within the time specified shall be subject to a penalty of $50 for such failure. The court upheld the statute, and Mr. Justice Brewer, in delivering the opinion of the court, quoted with approval the following language of the Supreme Court of South Carolina in passing upon the constitutionality of the statute: "The object of the statute was not to penalize the carrier for merely refusing to pay a claim within the time required, whether just or unjust, but the design was to bring about a reasonably prompt settlement of all proper claims, the penalty, in case of a recovery in a court, operating as a deterrent of the carrier in refusing to settle just claims, and a compensation of the claimant for the trouble and expenses of the suit which the carrier's unreasonable delay and refusal make necessary."

The decisions of the Supreme Court of the United States settle beyond doubt the question that the statute is not in conflict with the Federal Constitution. If it be true, then, that the "equal protection of the law" and "due process of law" provisions of the Federal Constitution are not violated by the statute in question, it is difficult to see how any provisions of the Constitution of this State, which affords, in substance, the same protection and no more, is violated.

No authority against this view is brought to our attention except *Phenix Ins. Co.* v. *Hart,* 112 Ga. 765, and *Thompson* v. *Traders' Ins. Co.* (Mo.) 68 S. W. 889, in which the courts of Georgia and Missouri pronounced unconstitutional statutes prescribing penalties for *vexatious* delays in adjusting and paying claims for losses under insurance policies. Whatever doubts may be entertained concerning the constitutionality of the statute we are now considering, there can be no reasonable doubt of the validity of a statute providing a penalty for vexatious delay or frivolous defenses against claims due under insurance policies, such as the Georgia and Missouri statutes. Therefore,.

we cannot view the cases last cited as having much persuasive force.

We do not think that any previous decisions of this court militate against the validity of this statute. The court has repeatedly upheld a statute prescribing penalty against railroad companies for failure to pay wages of discharged employees.

An amendment to that statute extending its provisions to all corporations in their dealings with employees was recently passed upon by this court without question as to its constitutionality. *Wisconsin & Ark. Lbr. Co.* v. *Reaves,* 82 Ark. 377.

A line of decisions of this court are pressed upon our attention, holding a stipulation in contracts for payment of attorney's fee in event of suit to be void. These decisions are, however, in effect placed upon the ground that it is against policy of courts to enforce penalties or forfeitures for the breach of a contract to pay money. The courts should not, however, refuse, out of mere considerations of policy, to aid in the enforcement of penalties prescribed by the Legislature, when not forbidden by the Constitution. Under such circumstances, the Legislature, and not the courts, is to be the judge as to the policy to be adopted or pursued.

After careful consideration of the question, we are of the opinion that the statute violates no provision of the Constitution, and is a valid exercise of legislative power. We approve the views expressed by the Kansas, Tennessee and Nebraska courts that the business of insurance is of such a public character that it is a proper subject of distinct regulation, and the State is so interested in the speedy adjustment and payment of indemnity under insurance policies for loss of life, health or property of its citizens, that penalties may be prescribed for unreasonable delay in that respect. These statutes are correctly based upon the theory that insurance companies, after loss occurs, have the insured at a great disadvantage, and are in position to inflict great damage by mere delay in payment of losses. Therefore it is neither unjust nor unreasonable to inflict a penalty which will in some degree compensate for that injury where the resisted claim is finally adjudged to be just, and which will also tend to deter the company liable from interposing unnecessary delay in settlement. The penalty imposed by this statute may seem un-

usually harsh, and it is argued that the severe penalty is cal-
culated to deter companies from litigating losses against which
their defenses appear to be meritorious.  That was a matter for
legislative determination, and we do not find the penalty imposed
by this statute to be so unreasonable as to justify us in declaring
it void on that account.

Judgment affirmed.

WOOD, J., dissents as to penalty.