G. W. SISK, D/B/A SISK STAVE MILL AND HARTFORD INS. CO. *v.* BILL R. PHILPOT, GUARDIAN OF THE ESTATE OF HERMAN WARDEN DAVIS

5-4448                                           423 S. W. 2d 871

Opinion delivered February 12, 1968

*Shaver, Tackett & Jones,* for appellants.

*Shaw & Shaw,* for appellee and cross-appellant.

J. FRED JONES, Justice. This is a workmen's compensation case presenting an unusual question under the provision of Ark. Stat. Ann. § 81-1311 (Repl. 1960) which provides in part as follows:

> "The employer shall promptly provide for an injured employee such medical, surgical, hospital and nursing service, and medicine, crutches, artificial limbs and other apparatus as may be necessary during the period of six [6] months after the injury, or for such time in excess thereof as the Commission, in its discretion, may require."

The precise question presented in this case is whether or not the employer (or compensation insurance carrier) can be required to provide nursing service by the injured employee's mother and father. The question is not whether nursing service should be provided. The question is where and by whom the service should be rendered.

On November 24, 1965, while in the course of his employment, Herman Davis, a young man 28 years of age, sustained an accidental injury to his left hand when it was struck with a chopping axe. While under anesthetic during the medical repair of the wound to the hand, his heart stopped functioning for a period of some twenty-two minutes, resulting in severe and irreversible brain damage. As a result of the brain damage, Herman is mentally incompetent and physically helpless. He lives with his mother and father where he requires constant attention twenty-four hours each day.

The employer and compensation insurance carrier recognized and accepted the claim as compensable. They furnished the required medical, surgical, hospital and nursing service, including medicine, crutches, etc. during

the period of six months after the injury and for some time thereafter. They recognize that Herman Davis is permanently and totally disabled as a result of his injury, and they are paying the weekly amounts due Herman for this disability. They recognize and are willing to accept their responsibility for extended medical benefits, including nursing service beyond six months, but they do not recognize their obligation to pay Herman's parents for rendering this service in their home.

Bill R. Philpot is the legally appointed and acting guardian of the estate of Herman Davis, and Johnnie Davis, the father of Herman, is guardian of his person. The compensation carrier paid Johnnie Davis $100.00 per week for a period of three months for nursing Herman, but these payments were suspended and Mr. Philpot filed claim, apparently on behalf of Herman and his father, for reinstatement of payments for nursing expenses and claimed $500.00 per month as a reasonable amount to be paid to Herman's father and personal guardian for the nursing care being rendered to Herman. Mr. Philpot is designated claimant and the employer and compensation insurance carrier are designated "respondents" in the record of proceedings before the Commission.

A hearing was had before the referee in Mena at which time the claimant was represented by counsel, and the respondent was not represented and did not participate. The referee awarded $500.00 per month for the care of Herman Davis and ordered this amount, from the date of last payment, to be paid in one lump sum and such payments to continue on a monthly basis. The referee awarded the maximum attorney fee to claimant's attorney.

On review by the full Commission, respondents did appear and offered evidence as to the availability of hospital and rest home facilities in the area of Mena, and respondents argued that a rest home for Herman would be some less expensive and much more

efficient in caring for him. Following the hearing before the full Commission on review, the Commission made the following award:

"Beginning the day after the last day for which Johnnie Davis was paid by respondents for the care of Herman Warden Davis, respondents shall resume payments to Johnnie Davis at the rate of $500.00 per month with such payments to continue subject to the provisions and limitations of the Act, and the further directions of this Commission. All sums accrued to date shall be paid in one lump sum. Respondents shall, of course, continue the payment of weekly compensation benefits at $34.91, to Mr. Bill R. Philpot, as guardian of the estate of Herman Warden Davis, with such payments to continue subject to the provisions and limitations of the Act.

"Respondents shall, also, provide Herman Warden Davis with the necessary and reasonable medical attention required as the result of his admitted compensable injury on November 24, 1965.

"Respondents shall, also, pay to claimant's attorney, Mr. Robert Shaw of Mena, an attorney's fee in the sum of $600.00, which is in addition to the other benefits awarded in this case."

This award of the Commission was affirmed on appeal to the circuit court and on appeal to this court, respondents rely on the following point for reversal:

"The Court erred in allowing the employee's father the sum of $500.00 per month as compensation for his care of the employee."

The claimant has cross appealed relying upon the following points:

"The Court properly allowed the employee's father the sum of $500 per month as compensation for his services in caring for the injured employee.

"The Court erred in failing to award attorney fees based upon the total award."

Herman Davis was first hospitalized at De Queen where his brain damage occurred. He was then transferred to a hospital in Texarkana where he was under intensive medical care by a neurosurgeon, and later by a physiotherapist. In preparation for releasing him to his home, Herman's mother and father went to Texarkana and observed and practiced the physical therapy treatment being administered under the supervision of the neurosurgeon and physiotherapist. At the suggestion of the compensation carrier and the neurosurgeon, Herman's mother and father purchased a home in Mena and moved to it from their former home several miles out in the country from Mena, in order that Herman would be near doctor's offices and where telephone service would be available. Herman was first transferred from the hospital in Texarkana to a hospital in Mena, and was later transferred to the home of his mother and father in Mena where he has remained since his release from the hospital.

When Herman was first released from the hospital, he could not bend his knees and could not speak. He has improved under the care of his parents, to the extent that he can now bend his knees and repeat simple single words, but he still does not recognize anyone and is still totally helpless insofar as mental processes and body functions are concerned. He requires constant nursing care twenty-four hours per day. He weighs 170 pounds and must be lifted and attended as would a very young baby. The service of two individuals is required in lifting Herman to avoid injury, and his father and mother have learned to interpret and respond to his symptoms of discomfort and physical needs.

After Herman's release from the hospital, a practical nurse was first employed to stay with him in his home and the compensation carrier paid the nurse $30.00 per day, amounting to $900.00 per month. The work be-

came so strenuous for the nurse she quit. Although effort has been made, no other person has been found who is capable or willing to accept employment in nursing Herman.

Herman's father was earning more than $500.00 per month as an employee of the U. S. Forestry service. He quit this employment in order to assist his wife full time in attending their injured son. Mr. Davis testified as to the full days routine recommended by the doctors and as carried out by him and his wife in caring for. Herman.

Dr. Calvin Austin, a practicing physician in Mena, testified that he had observed Herman in the home of his parents and the overall substance of his testimony is to the effect that Herman is receiving excellent care and better care than could reasonably be expected if he were in a rest home.

Dr. Retia L. Edmonson of Texarkana, who had attended Herman following his injury, rendered a supplementary report on March 21, 1967, of examination conducted on March 17, in which she stated:

"This patient has continued to show some progress in the last several months, but he continues to be totally helpless and it is necessary for him to have continued constant supervision and care. The patient's parents have taken excellent care of him, and he has been able to remain at home with them. I feel that these parents are well qualified to continue caring for their son. Since the patient has no control over his sphincters (urination and bowel movements) a routine has been set by the parents, who both must assist the patient in his daily activities.

* * * The parents have done a lot for their son; they are interested in his health and welfare, and by this time they are quite well trained in his care."

There is no medical evidence, in the record, even suggesting that Herman is not receiving the best possible nursing care and attention at the hands of his mother and father. There is no medical evidence, in the record, that Herman would be better, or as well, provided for in rest home on a hospital. All the medical evidence, in the record before us, is exactly to the contrary. There is no medical or other evidence that Herman does not require full-time nursing attention. All the evidence on this point is to the effect that such attention is required.

The statute does not limit the medical, surgical, hospital and nursing service, for which the employer is liable, to any particular place or to be performed by any particular individuals. The statute does provide, however, "all persons who render service or provide things mentioned herein [Ark. Stat. Ann § 81-1311 (Repl. 60)] shall submit the reasonableness of the charges to the Commission for its approval, and when so approved, shall be enforceable by the Commission in the same manner as is provided for the enforcement of compensation payments."

Under the facts and circumstances, as evidenced by the record in this particular case, we are of the opinion that there was substantial evidence to sustain the findings and award of the compensation Commission and that the judgment of the circuit court sustaining the award should be affirmed.

Ark. Stat. Ann. § 81-1332 (Repl. 1960) sets a maximum limitation on attorney fees that may be legally charged in a compensation case and provides that the attorney's fee, to be valid, must be approved by the Commission. The last sentence of this section is as follows:

"In determining the amount of fees, the Commission shall take into consideration the nature, length and complexity of the services performed, and the

benefits resulting therefrom to the compensation beneficiaries."

Thus it is seen that a great deal of discretion is placed in the Commission in approving attorney fees within the percentage limitations of the statute, and we find no abuse of the Commission's discretion in limiting the award of attorney's fee to the maximum percentage of the accrued amount due under the award in this partially controverted case, rather than on the amount paid and to be paid under the award, as contended by appellee on cross appeal. As pointed out in the case of *Sparks Memorial Hospital* v. *Walton*, 229 Ark. 1014, 320 S. W. 2d 102, this court does not award attorney fees for appeals in compensation cases, that authority rests in the sound discretion of the Workmen's Compensation Commission.

Affirmed on appeal and cross appeal.