LEO GARNER v. AMERICAN CAN COMPANY, ET AL

5-4878                                          440 S.W. 2d 210

Opinion Delivered April 28, 1969

*Daily* & *Woods* for appellant.

*Shaw, Jones* & *Shaw* for appellees.

CARLETON HARRIS, Chief Justice.    On February 9, 1959, appellant, Leo Garner, sustained a crushing injury to his left hand, which required extensive surgery, and partial amputation, the injury occurring in the course of appellant's employment with the Dixie Cup Division of American Can Company.    A bone graft was taken from the claimant's right lower leg for the purpose of repairing the left hand, and after the surgery, Garner developed thrombophlebitis, secondary to the removal of the bone graft.    Later, he developed multiple pulmonary embloi (blood clots in the lungs).    This condition required ligation of the large blood vessels. Garner has continued to suffer with thrombophlebitis, and he has deep venous thrombosis in both legs.    Appellant has not worked since October, 1966.

The appellee, American Mutual Liability Insurance Company carried the Workmen's Compensation Insur-

ance for the Dixie Cup Division of American Can Company at the time of the injury in 1959, and records reflect that it has paid Garner approximately $8,300.00 temporary total benefits, and $4,200.00 permanent partial benefits for a total of $12,500.00, in addition to a large amount of medical expenses. On November 30, 1965, Garner sustained another injury in the course of his employment with the same employer; however, by that date, American Can Company was self-insured. The company paid Garner a total of $33.00 temporary total benefits, and medical expenses of $52.00. Both American Mutual and American Can Company denied further medical treatment and compensation benefits to appellant as of October, 1966. A hearing was conducted before a referee for the Compensation Commision on January 27, 1967, at which time the referee found, *inter alia*, that Garner had been paid all compensation benefits and medical expenses by American Can Company to which he was entitled as a result of the injury of November 30, 1965; that Garner's present condition and medical expenses were the result of his injury of February 9, 1959; that appellant had already been paid $12,500.00, the maximum allowed in compensation benefits, by appellee on account of the injury on February 9, 1959, and that the claim had been controverted by both respondents. American Mutual was ordered to pay the medical bills incurred by Garner, and Garner's attorney was awarded the maximum attorney's fee to be based on the amount of the medical bills. American Mutual agreed to pay the bills, but appealed from that portion of the award which directed the company to pay an attorney's fee. Garner cross-appealed against the insurance company only, asserting that he was entitled to more than $12,500.00 compensation benefits, because of the 1959 injury. The 1965 injury involving the American Can Company, self-insured, was not embraced further in the proceedings after the referee's decision. On appeal, the full commission ordered American Mutual to pay the reasonable medical expenses incurred by Garner for the treatment of an ulcer on the front of his right leg below

the knee, and the company was further ordered to pay Garner's attorney the maximum attorney's fee based upon medical expenses so incurred, and the treatment, skin graft, and care of the ulcer. The commission then added:

> "The commission wishes to make clear that the attorney's fee does not apply to the medical expenses incurred in connection with the other parts of claimant's body that require treatment because of claimant's thrombophlebitic condition."

Garner was denied compensation over and above the $12,500.00 previously paid to him. On an appeal to the Sebastian County Circuit Court, Fort Smith District, an order was entered affirming the opinion and award of the commission. From the judgment so entered, appellant brings this appeal. For reversal, it is asserted that the court and the commission erred in denying Garner further compensation benefits from American Mutual. It is also asserted that error was committed in limiting the attorney's fee to the medical expense incurred for treatment of the ulcer on Garner's right leg, rather than allowing an attorney's fee on the basis of the medical expenses incurred in connection with all parts of appellant's body that require treatment because of the thrombophlebitic condition. We proceed to a discussion of these contentions.

Appellant argues that he is entitled to receive not only the maximum of $12,500.00 mentioned in Ark. Stat. Ann. § 81-1310(a) (Repl. 1960), but is also entitled to 150 weeks' compensation under the provisions of (5) of Sub-section (c) of Section 81-1313. It is his opinion that the sections should be construed separately, as though unrelated to each other, rather than being construed together as interpreted by the commission and Circuit Court. Subsection (a) of 81-1310, before being amended in 1965, provided that:

> "Compensation to the injured employee shall

not be allowed for the first seven [7] days' disability resulting from injury, excluding the day of injury. If a disability extends beyond that period, compensation shall commence with the ninth [9th] day of disability. If the disability extends for a period of four [4] weeks, compensation shall be allowed beginning the first day of disability, excluding the day of injury.

"Compensation payable to an injured employee for disability shall not exceed sixty-five per centum (65%) of his average weekly wage at the time of the accident, and shall not be greater than thirty-five dollars ($35.00) per week, nor less than seven dollars ($7.00) per week and shall be paid for a period not to exceed 450 weeks of disability, and in no case shall exceed twelve thousand five hundred dollars ($12,500.00), in addition to the benefits and allowances under section 11 [§ 81-1311][1] hereof. The minimum and maximum limitations of time and money expressed in the foregoing sentence shall apply in all cases pertaining to the payment of money compensation on account of disability."

It is then pointed out that Sub-section (c) of § 81-1313, which deals with scheduled permanent injuries, does not use the word, "disability," and it is asserted that § 81-1310 is a section dealing entirely with compensation to be paid an injured employee for disability.

Appellant's argument is largely predicated on the 1965 amendment to § 81-1310, found in the 1967 supplement as § 81-1310.1. As amended, the section provides:

"Hereafter, the maximum amount to be paid in Workmen's Compensation benefits under Initiated Act No. 4 of 1948 [§ 81-1349] as amended, shall not exceed sixty-five (65) per cent of a workers average

---

[1]This section provides for medical, surgical, hospital, and nursing service, and medicine, crutches, artificial limbs, and other apparatus as may be necessary after the injury.

weekly wage at the time of the accident, but in no event shall a worker or his dependents receive in excess of thirty-eight dollars and fifty cents ($38.50) per week, and in no event shall the compensation period exceed 450 weeks nor shall the total amount paid exceed fourteen thousand five hundred dollars ($14,500.00), provided that this limitation shall not apply to medical benefits as now provided by law, nor shall this limitation preclude the payment to dependents of a deceased worker of additional benefits as now provided by law, not to exceed fourteen thousand five hundred dollars ($14,500.00). Minimum compensation to be paid shall be not less than ten dollars ($10.00) per week. Hereafter, all the actual costs for medical and hospital treatment in hernia cases determined to be compensable shall be paid by the employer or by the insurance carrier for such employer.''

It will be noted that the amendment changes the maximum figure per week that could be drawn from $35.00 to $38.50, the minimum, from $7.00 per week to $10.00 per week, and the maximum amount of money that can be paid is changed from $12,500.00 to $14,500.00. However, these particular changes are not pertinent to appellant's argument, for he recognizes that his compensation is governed by the provisions of the act which were in force at the time of his injury. It is asserted that the 1965 amendment carefully uses the language, ''the maximum amount * * * shall not exceed * * * in no event shall the total amount'' exceed $14,000.00. Appellant says that these restrictions are not in Section 81-1310, and he attaches great significance to that fact. In other words, he feels that the language used, ''maximum amount,'' and ''total amount,'' was intentionally employed by the General Assembly as a matter of changing the original section. It is argued that, prior to 1965, Sections 81-1310 and 81-1313 were entirely separate, each providing separate compensation; but that

the 1965 amendment (§ 81-1310.1) simply means that all benefits received under both § 81-1310.1 and 81-1313 shall not exceed a total of $14,500.00.

Appellant attaches more importance to the words, "total amount," and "maximum amount," than we consider to be justified, and we find no legislative motive in the different words used. In the first place, while it is true that the word, "disability," does not appear in Sub-section (c), § 81-1313, *the whole section is devoted to disability.* The very opening line states:

> "The money allowance payable to an injured employee *for disability* [emphasis supplied] shall be as follows * * *."

Thereafter follow Sub-section (a), Sub-section (b), and Sub-section (c), *all* dealing with different types of disability. Section 81-1310 provides that compensation for disability shall be paid for a period not to exceed 450 weeks, "*and in no case*[2] shall *exceed*[2A] $12,500.00, in addition to the benefits and allowances under Section 81-1311." This last, as previously mentioned, deals with medical and hospital services and supplies, and it is noticeable, contrary to appellant's argument, that the section specifically points out that benefits under § 81-1311 *are in addition* to the $12,500.00. It would appear that, if this maximum did not include all other benefits, the legislature could just as easily have said, "in addition to the benefits and allowances under Sub-section (c), § 81-1313." If there was any significance in the choice of words used in the 1965 amendment, we think the reason is set out in the emergency clause, which reads, as follows:

> "It has been found and is declared by the General Assembly that the welfare of both employer and employee is of primary interest to the public; that maximum and minimum benefits presently

---

[2] & [2A]Our emphasis.

payable under the Workmen's Compensation Law are inadequate due to the steadily increasing cost of living and should be increased immediately to meet said increase in the cost of living, *that certain disability benefits should be clarified* [emphasis supplied], and that the immediate passage of this Act is necessary in order to alleviate the aforementioned. Therefore, an emergency is hereby declared to exist, and this Act being necessary for the preservation of the public peace, health and safety shall take effect and be in full force from and after its passage and approval."

It will be noticed that the italicized phrase uses the word, "clarified," rather than "changed." Since appellant admits that the amendment clearly covers both disability and scheduled permanent injuries, the only purpose in clarifying would have been to make clear that § 81-1310 also included both.

As to the second point, we are also unable to say that the commission and trial court erred. The insurance company continued, during the course of the years, to furnish medical treatment for appellant after February, 1959. At the time of the second injury, he was still being furnished this treatment, but American Mutual denied responsibility for medical bills after October, 1966. It was the view of appellee at that time that the treatment needed by Garner was a result of the 1965 injury, thus due to be taken care of by American Can Company. On November 18, 1966, Robert Law, Branch Claim Manager for appellee, wrote the Dixie Cup Division of American Can Company relative to a bill which had been received by American Mutual in connection with the November 30, 1965, injury. In the letter, Mr. Law stated:

"They [the doctors] advise us they put Mr. Garner in the hospital, as per the attached bill, which is dated October 5th, so that this is your re-

sponsibility and not ours. We understand that he has need for continued treatment and hospitalization in a connection with the present difficulty which arose out of his November 30, 1965, accident. Since we are not responsible for this bill, we are sending it to you so you may place it in line for payment.''

The denial of medical benefits by appellee is discussed in the commission's opinion, as follows:

''It is evident from the evidence that the controversy that arose over the payment of certain medical, doctor and hospital bills was due, at least in part, to an error or mistake on the part of Dr. F. M. Lockwood. In 1963, Dr. Lockwood began treating claimant for a thrombophlebitic condition that resulted from claimant's admitted compensable injury on February 9, 1959, (WCC File No. A904876) at which time American Mutual was the workmen's compensation insurance carrier for the employer. Said carrier continued to pay for the necessary medical attention occasioned by the aforesaid condition apparently until after claimant sustained another injury to his *left* leg when it was struck by a roll of paper on November 30, 1965, at which time the employer was self-insured. * * * Claimant continued working for respondent employer up until sometime in October, 1966, when an ulcer developed on the front of his right leg below the knee. A skin graft was applied in an attempt to cure said ulcer. At the hearing before the referee on February 7, 1967, Dr. Lockwood at first testified to the effect that the ulcer on the front of claimant's right leg below the knee was causally connected with the injury on November 30, 1965, as he was assuming that that was the site of the injury on November 30, 1965. However, on cross-examination, by counsel for the employer, the records and reports of Dr. Lockwood established that Dr. Lockwood was mis-

taken and that the injury on November 30, 1965, was to claimant's *left* leg. After this matter was called to Dr. Lockwood's attention, he stated that the ulcer that was found on the claimant's right leg below the knee in October, 1966, had no causal relationship to the November 30, 1965, injury. To add to the confusion and to the controversy of liability of certain medical expenses, claimant testified before the referee to the effect that the November 30, 1965, injury was to his *right* leg, at the site of the ulcer, for which a skin graft was applied after the claimant quit work in 1966. The Commission is of the opinion that the overwhelming preponderance of the evidence is that the November 30, 1965, accidental injury was to the claimant's left leg, as is shown by the reports of Dr. Lockwood and the report of Dr. T. P. Foltz * * *.

\* \* \*

"* * * The record, as a whole, establishes that the ulcer was due to the thrombophlebitic condition that resulted from the February 9, 1959, accident injury for which American Mutual is liable. The Commission is not without some sympathy for American Mutual because they were apparently misled to some degree by Dr. Lockwood although that does not negate the fact that they actually controverted the responsibility for the needed medical attention.''

The commission then pointed out that, though American Mutual actually controverted the legal obligation to provide the needed medical attention, the controversy that arose between American Mutual and American Can Company was certainly due in part to this mistake of Dr. Lockwood, as well as a mistake on the part of the claimant, and the finding was then made that the attorney's fee would not be based on any medical expense except that related to treatment of the ulcer.

Let it be remembered that appellee had faithfully

paid all medical expenses in connection with the 1959 injury, and at the hearing before the referee, Mr. Law announced that the company was still ready and willing to pay the medical treatment and hospitalization, except for the specific injury of 1965. We think the circumstances set out in the commission's opinion were due to be considered in determining the attorney's fee.

Ark. Stat. Ann. § 81-1332 (Repl. 1960) provides that whenever the commission finds that a claim has been controverted, it shall direct that legal services be paid for by the employer or carrier in addition to compensation; that such fees should be allowed only on the amount of compensation controverted and awarded. In *Sisk* v. *Philpot*, 244 Ark. 79, 423 S.W. 2d 871, we pointed out that a great deal of discretion is placed in the commission in approving attorney fees within the percentage limitations of the statute.[3] In the case before us, the commission found that American Mutual Liability Insurance Company had only controverted the claim with reference to medical, doctor and hospital bills incurred by the claimant for the treatment of the ulcer on the front of his right leg below the knee, and we think there is substantial evidence to support this finding. Certainly, we are not able to say that the commission abused its discretion. Appellant contends that the issue is not one involving abuse of discretion on the part of the commission, but rather is whether American Mutual controverted the claim for medical expense. For the reasons heretofore given, we think appellant's argument is in error, and we are of the opinion that the cases cited by him are not controlling under the circumstances herein.

Affirmed.

---

[3] After all, there is no requirement that the commission give the maximum attorney's fee.