## ALUMINUM COMPANY OF AMERICA
### *v.* Henry A. HENNING

76-170                                        543 S.W. 2d 480

Opinion delivered November 29, 1976
(Division I)

*Rose, Nash, Williamson, Carroll, Clay & Giroir, P.A.,* for appellant.

*Hardin & Rickard,* by: *Robert N. Hardin,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellant-employer contends that appellee-claimant's workmen's compensation claim cannot be considered as having been controverted under the terms of the Workmen's Compensation Act and, for that reason, it has no liability for fees for appellee Henning's attorney. The basis for this contention is that appellant, within the time allowed it after the claim was filed with the commission, advised the secretary of the Workmen's Compensation Commission the claim would not be controverted. We hold that the evidence was sufficient to support the commission's finding that the claim was controverted.

Henry A. Henning had suffered a heart attack on November 6, 1974. Initially, appellant took the position that the heart attack was not causally related to Henning's duties

and he was afforded medical care and disability benefits under an insurance program provided by appellant under a contract with an insurance company. On February 25, 1975, Henning was advised the company considered the heart attack to be "personal." The next day he consulted attorney Robert N. Hardin, who wrote the Workmen's Compensation Commission, asserting a claim for workmen's compensation benefits and asking that appellant be requested to make its position known. The commission sent a copy of Hardin's letter to appellant, asking it to state its position. On March 31, 1975, appellant advised the commission that it would not controvert the claim. This was within the allotted time, as extended upon appellant's request. In the letter confirming its acceptance of responsibility for the claim, appellant stated that it was sending a copy of the letter to Hardin, so he would know that appellant did not intend to controvert the claim.

Henning had been called to meet with Charles R. King, Jr., administrator of Alcoa's self-insured workmen's compensation program on February 25, 1975. It was at that meeting that Henning was told that appellant had "ruled" that his heart attack, suffered when he lifted a fellow employee of Alcoa from an ambulance at the emergency room of the Saline County Hospital, was personal. The next day he advised Hardin what had happened. He spent about 15 minutes in Hardin's office. He did not return there before he learned that Alcoa was going to treat his claim as compensable. He required no further legal assistance in connection with his claim.

King testified substantially as follows:

I did the preliminary workup on the case. Henning was called out on an ambulance run when a mechanic was injured in one of our buildings. Henning drove the ambulance to the hospital. I understand that while Henning was in the emergency room he collapsed. The doctors and nurses suspected that it might be a heart attack and they began to treat him, putting him in intensive care. I discussed the case with our personnel manager, our company physician and the people in our corporate workmen's compensation department. We finally made a determination that it was not compensable and we

would not pay workmen's compensation. With the personnel manager's approval, I apprised Henning of this fact. I would not take issue that the date was February 25, 1975. I explained that we had investigated the case and we had taken the position that we would not pay workmen's compensation and that, if he disagreed, he had certain rights under the Workmen's Compensation Law. The matter was closed until the claim was filed. No one on behalf of Alcoa ever filed a notice of injury. On review, after the claim was filed, we felt that it was not a workmen's compensation case, but that we could not successfully defend our position in court. We did not discover any additional evidence that changed our mind or our position.

Appellant contends that under the provisions of Ark. Stat. Ann. §§ 81-1317 and 81-1319 (Repl. 1960) a claim cannot be considered as controverted until after a claim has been filed by an injured employee with the commission and the employer has either filed a notice of controversion or failed to timely state its position. We cannot agree with such a narrow construction of these sections. We must construe and apply the statutory provisions of the Workmen's Compensation Act liberally in favor of the claimant in the light of its beneficent and humane purposes, resolving all doubtful cases in favor of the claimant. *International Paper Co.* v. *Tidwell,* 250 Ark. 623, 466 S.W. 2d 488.

The sections of the act upon which appellant relies are as follows:

81-1317. Notice of injury or death. - (a) Time for giving. Notice of injury or death for which compensation is payable shall be given within sixty [60] days after the date of such injury or death (1) to the Commission and (2) to the employer.

(b) Form. Such notice shall be in writing and shall contain the name and address of the employee and employer, a statement of the time, place, nature and cause of the injury or death, and shall be signed by the person claiming compensation, or by someone in his behalf.

(c) Failure to give notice. Failure to give such notice

shall not bar any claim (1) if the employer had knowledge of the injury or death, (2) if the Commission determines that the employer has not been prejudiced by failure to give such notice, (3) if the Commission excuses such failure on the ground that for some satisfactory reason such notice could not be given. Objection to failure to give notice must be made at or before the first hearing on the claim.

81-1319. Payment of compensation. - (a) Payment. *Compensation shall be paid directly* to the person entitled thereto *without an award, except in those cases where liability has been controverted by the employer.* If the compensation beneficiary is a mental incompetent or a minor of tender years or immature judgment, the Commission may in the exercise of its discretion direct that payment shall be made to a legally appointed guardian of the estate of such incompetent or minor.

(d) Right to compensation controverted. Each employer desiring to controvert the right to compensation shall file with the Commission, on or before the fifteenth (15th) day following notice of the alleged injury or death, a statement on a form prescribed by the Commission that the right to compensation is controverted on the grounds therefor, the names of the claimant, employer, and carrier, if any, and the date and place of the alleged injury or death. Failure to file such statement of controversion shall not preclude the urging of any defense to the claim subsequently filed, nor shall the filing of a statement of controversion preclude the urging of additional defenses to those contained in such statement of controversion. [Emphasis ours.]

The significance of appellant's contention lies in the terms of Ark. Stat. Ann. § 81-1332 (Repl. 1960). That section follows:

81-1332. Fees for legal services. - Fees for legal services rendered in respect of a claim shall not be valid unless approved by the Commission, and such fees shall not exceed thirty per centum (30%) on the first one thousand dollars ($1,000.00) of compensation, or part thereof, twenty per centum (20%) on all sums in excess of one thousand dollars ($1,000.00), but less than two thou-

sand dollars ($2,000.00) of compensation, and ten per centum (10%) on all sums of two thousand dollars ($2,-000.00) or more of compensation. Whenever the Commission *finds that a claim has been controverted,* in whole or in part, the Commission shall direct that fees for legal services be paid by the employer or carrier in addition to compensation awarded, and such fees shall be allowed only on the amount of compensation controverted and awarded. Whenever the Commission *finds a claim has not been controverted,* but further finds that bona fide legal services have been rendered in respect to the claim, then the Commission shall direct the payment of such fees out of the compensation awarded. In any case where attorneys' fees are allowed by the Commission, the limitations expressed in the first sentence herein shall apply. In determining the amount of fees, the Commission shall take into consideration the nature, length and complexity of the services performed, and the benefits resulting therefrom to the compensation beneficiaries. [Emphasis ours.]

Appellant relies principally upon *Horseshoe Bend Builders* v. *Sosa,* 259 Ark. 267, 532 S.W. 2d 182. But this case is neither controlling nor persuasive, even though we reversed the Workmen's Compensation Commission's finding that the claim in that case was controverted. There we simply held that neither failure to pay nor dilatory payment of compensation benefits amounts to controversion *per se.* Although we held that, under the facts in that case there was no controversion, the holding certainly implies that the determination whether a claim was controverted may be a question of fact, and not one determined mechanically upon ascertaining whether, after the employee has complied with § 81-1317 by filing written notice with the commission and the employer, the employer responds by accepting the claim as compensable or filing a statement of controversion. See also, *Garner* v. *American Can Company,* 246 Ark. 746, 440 S.W. 2d 210. Use of the mechanical approach in determining whether a claim was controverted by resort to the pleadings was actually rejected in *International Paper Co.* v. *Remley,* 256 Ark. 7, 505 S.W. 2d 219.

A principal, if not the primary, purpose of determining

whether or not a claim is controverted is for the purpose of determining who is liable for the claimant's attorney's fees. Making an employer liable for the attorney's fees of the employee serves legitimate social purposes. Among them are discouraging oppressive delay in recognition of liability,[1] deterring arbitrary or capricious denial of claims, and insuring the ability of necessitous claimants to obtain adequate and competent legal representation. See 3 Larson, Workmen's Compensation Law, 15-584 through 15-611, §§ 83.10 — 83.13 (1976);. Note, Workmen's Compensation — Attorneys' Fees and Amount of Recovery, 8 Ark. L. Rev. 195. These fundamental purposes are not unlike those served by the statutes governing allowance of attorney's fees in litigation between an insured and an insurer.[2]

Just as is the case with insurance policy holders, an employee in a covered employment is entitled to rely upon his employer to promptly and honestly comply with its obligations, the payment of which is of very great importance to him, in respect both of amount and promptness, and the police power of the state is appropriately utilized to protect the employee for expenses incurred due to what may sometimes be heartbreaking delays, to encourage reasonably prompt settlement of all proper claims, and to deter refusal to settle just claims and to compensate the employee for trouble and expense of legal action which unwarranted delay and refusal make necessary. See discussion of authorities in *Arkansas Insurance Co.* v. *McManus,* 86 Ark. 115, 110 S.W. 797. The social needs addressed are sufficient basis for use of the state's police power in aid of these purposes. See, *Life and Casualty Co.* v. *McCray,* 291 U.S. 566, 54 S. Ct. 482, 78 L. Ed. 987. See also, *American Liberty Mutual Insurance Co.* v. *Washington,* 183 Ark. 497, 36 S.W. 963. Permitting recovery of such fees in insurance cases was intended to prevent defenses for the purpose of delay or other vexatious litigation. *John Hancock Mutual Life Ins. Co.* v. *Magers,* 199 Ark. 104, 132 S.W. 2d 841.

If the fundamental purposes of such statutes are to be

---

[1] We tacitly recognized the significance of a prompt assumption of liability by a carrier in *Wallace* v. *Jewell,* 210 Ark. 274, 195 S.W. 2d 340.

[2] For an excellent discussion of this subject, see Trammell, One State's experience With the Statutory Remedy for Insurer's Delays — A problem in Payment, 10 Ark. L. Rev. 439.

achieved, it must be considered that their real object is to place the burden of litigation expense upon the party which made it necessary. See *Globe & Rutgers Fire Ins. Co.* v. *Batton,* 178 Ark. 378, 10 S.W. 2d 859; *Commercial Union Assurance Co.* v. *Leftwich,* 191 Ark. 656, 87 S.W. 2d 55. It has been implied that this particular statutory provision is one, among others, inspired by a disproportionate ability of the parties to conduct the litigation or as a legislative "penalty" for the wrongful conduct of the party held liable. See Note, Taxability of Attorneys' Fees as Costs, 9 Ark. L. Rev. 70, where it was suggested that softening the impact of litigation upon certain classes who are typically caught in a disadvantageous position is desirable.

These factors were not articulated but, beyond a doubt they induced our holding that the commission did not err in finding that a claim was controverted in part, when there was justification for a claimant's employing an attorney because payments had been stopped, even though the employer had previously accepted the injury as compensable, and she was still undergoing medical treatment. *Pike County Poultry Co.* v. *Kelley,* 243 Ark. 460, 420 S.W. 2d 523. There it appears that no claim had been actually filed with the commission until after medical payments and payments for the healing period had been terminated by the employer on the assumption that the healing period had ended upon its physician's discharge of the claimant. It also appears from this opinion that the issues hinged upon the question whether the commission's finding that the claim was controverted was supported by substantial evidence. This was also the basis of our affirmance of the allowance of attorney's fees on that part of an award which appellant offered to pay by a check bearing the notation "Final Settlement," before appellee employed an attorney, in *International Paper Company* v. *Remley,* supra, 256 Ark. 7. There we said that the facts constituted substantial evidence that the employer was using its control of the purse strings as a coercive means of controverting the claim, in fact, if not by its formal pleadings. Such an inference is certainly justifiable here, because appellant finally accepted the claim as compensable without any evidence having been brought to its attention that was not known to it when it rejected the claim. If appellee had not then employed an attorney, he would have been in a rather helpless situation. It may well be

that there is no basis for allowance of attorney's fees where the attorney has not performed any substantial service. See *Wallace* v. *Jewell*, 210 Ark. 274, 195 S.W. 2d 340. But in this case the conclusion that Henning would never have been compensated had he not employed Hardin is certainly not unreasonable if not inescapable.

In *Littlejohn* v. *Earle Industries, Inc.*, 239 Ark. 439, 389 S.W. 2d 898, after a claim had been filed, the employer and insurance carrier stated they were not controverting the claimant's right to compensation and payment of medical expenses. We held that the legislature had entrusted to the Workmen's Compensation Commission the right to determine the *necessity* of a claimant's securing the services of an attorney to *preserve* his benefits. We also said that the courts should not question the discretionary power of the commission in the matter of an attorney's fee unless the determination is clearly wrong or unless there is a gross abuse of discretion. In that case the only question requiring adjudication by the commission was that pertaining to the end of the claimant's healing period. The evidence was held to be sufficiently substantial to support the commission's finding that the claim was controverted. From this case it would seem, and logically so, that if there is substantial evidence to support a finding that a claim is controverted, there is no abuse of the commission's discretion to award attorney's fees, and that this court cannot reverse the commission's finding in the absence of a gross abuse of discretion. See also, *Garner* v. *American Can Co.*, supra, 246 Ark. 746.

We reject the mechanistic construction of the act that would permit an employer, or carrier, to refuse compensation until after the employee has been forced to employ an attorney and then escape liability for the attorney's fees by formally advising the commission that it will not controvert the claim asserted by that attorney. To do so would put form above substance. It would also be inconsistent with our treatment of the statutes governing allowance of attorney's fees in actions against insurance companies. In such cases, the statutes do require that suit be brought. But when this has been done, it is only necessary, in order to invoke the statute, to show facts from which it can reasonably be inferred that the company understood that payment was demanded and

that it refused to make it. *Metropolitan Life Ins. Co.* v. *Shane,* 98 Ark. 132, 135 S.W. 836. It is not necessary that the demand be formal if there is a clear refusal to pay. *Phoenix Insurance Co. of Hartford* v. *Fleenor,* 104 Ark. 119, 148 S.W. 650. When the denial of liability is clear and the claimant is compelled to employ an attorney to enforce his claim, the statute is applicable. *Globe & Rutgers Fire Ins. Co.* v. *Batton,* supra, 178 Ark. 378; *Commercial Union Assurance Co.* v. *Leftwich,* supra, 191 Ark. 656. This rule applies even if no specific demand has been made when the insurance company informs the claimant in no uncertain terms that it will not make payments and that it denies liability. *Continental Casualty Co.* v. *Vardaman,* 232 Ark. 733, 340 S.W. 2d 277. Liability for attorney's fees attaches wherever an insured is required to file suit, even though the insurer confesses judgment before trial. *Federal Life & Casualty Co.* v. *Weyer,* 239 Ark. 663, 391 S.W. 2d 22.

A liberal construction favoring the claimant mandates a holding that the question whether a claim is controverted be one of fact to be determined from the circumstances of the particular case, only one of which is the status of the formal proceedings before the commission, and that, as in other such determinations, the commission's finding should not be reversed if there is substantial evidence to support it, or it is clear that there has been a gross abuse of discretion.

Appellant argues, in the alternative, that the award of the maximum allowable fee in this case was an abuse of discretion. The Workmen's Compensation Commission has a great deal of discretion in fixing and approving the amount of attorneys' fees. *Sisk* v. *Philpot,* 244 Ark. 79, 423 S.W. 2d 871. The statutory limitation on the amount is that the fees "shall not exceed" a percentage of the compensation awarded. Ark. Stat. Ann. § 81-1332. The very words "shall not exceed" indicate that the maximum allowance should not be made in every controverted case. We have said that there is no requirement that the maximum attorneys' fees be given. *Garner* v. *American Can Co.,* supra. We have likewise said that the statute is in the nature of a restrictive one in that the commission must observe fixed limitations. *Norsworthy* v. *Georgia Pacific Corp.,* 249 Ark. 159, 458 S.W. 2d 401. The statute is a *limitation* on the amount that may be paid. *Wallace* v. *Jewell,* supra. The importance of hearing testimony regarding the fee

has been noted. *Lundell* v. *Walker,* 204 Ark. 871, 165 S.W. 2d 600.

On May 22, 1975, the Administrative Law Judge took evidence on the issue of whether the claim was controverted, and whether appellant's attorney was entitled to a fee. The Administrative Law Judge requested that claimant's attorney testify as to his services so that a fee might be determined in the event the judge decided that the claim was controverted. Claimant's attorney declined on the ground that it would be a moot question if the judge held for Alcoa. The judge agreed with this position but promised, if both parties agreed to the procedure, that there would be an additional hearing on the matter of fees if he decided the claim was controverted. After the judge decided that the claim was controverted, he awarded the maximum fee without any additional hearing. The commission also held that the claimant's attorney was entitled to the maximum fee and the Circuit Court affirmed the decision.

The appellant observed that as of August 1, 1976, the claimant's attorney had been paid $1,171.46; and, if the claimant lives out his average life expectancy of thirteen years, his attorney would also be entitled to $4,495.40 plus ten percent commission on additional medical and hospital services. Except for proceedings relating to allowance of attorney's fees, the record discloses no services except those rendered prior to acceptance of the claim, consisting of one client interview of 15 minutes' duration and one letter. The claimant states that he knows of no other case where the commission has awarded less than the maximum fee in a controverted case. He argues that he is entitled to the fee because Alcoa exercised bad faith in denying the claim and handled the claim in a haphazard manner. He asserts that maximum fees should be imposed so that employers will carefully investigate and sparingly deny cases in order to avoid the extra expense. But the imposition of attorney's fees is not purely punitive. To make them so would not be consistent with the lack of statutory requirement that the refusal to pay be unreasonable or arbitrary and with the requirement that an attorney's services be necessary and substantial. See *Pike County Poultry Co.* v. *Kelley,* supra, 243 Ark. 460; *Wallace* v. *Jewell,* supra, 210 Ark. 274. See also, 3 Larson, supra, at § 82.12, p. 15-591.

In fixing the amount of the fee the statute requires the commission to take into consideration the nature, length and complexity of the services performed as well as the benefits resulting to the claimant. *Sisk* v. *Philpot*, supra, 244 Ark. 79. When judgments are recovered against insurance companies, we have said that attorney's fees allowed should be commensurate not only with time and work required but also with the ability present and necessary to meet the issues that arise and that, to be reasonable, they should not be so small or low that well prepared attorneys would avoid that class of litigation or fail in the employment of sufficient time for thorough preparation but should be sufficient to compensate for the engagement of counsel thoroughly competent to protect the interests of the claimant. *John Hancock Mutual Life Ins. Co.* v. *Magers*, supra, 199 Ark. 104. These considerations are also important in workmen's compensation cases.

It may not be necessary in every case for the commission or Administrative Law Judge to take evidence to be considered in addition to the trial record, because the record itself speaks to these issues, and in some cases the maximum fee would be so clearly indicated that no evidence could justify a lesser amount. In *Union Central Life Ins. Co.* v. *Mendenhall*, 183 Ark. 25, 34 S.W. 2d 1078, it was held that the court erred in fixing the amount of attorney's fees without a hearing on the motion for them and without hearing evidence tending to establish the proper amount. Where, as here, the record indicates that a bare minimum of services was rendered, it was an abuse of discretion to award the maximum fee without additional evidence that this fee was justified.

The judgment is affirmed insofar as the question of controversion is concerned, but reversed as to the amount of attorney's fees allowed and remanded with directions to the circuit court to remand the case to the commission for further proceedings not inconsistent with this opinion.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and JONES, JJ.