J. P. PRICE LUMBER COMPANY and AMERICAN MUTUAL INSURANCE COMPANY *v.* Meade ADAMS

75-90                                          527 S.W. 2d 932

Opinion delivered October 13, 1975

*Riddick Riffel,* for appellants.

*Paul K. Roberts,* for appellee.

CONLEY BYRD, Justice. It is conceded by the appellants, J. P. Price Lumber Company and American Mutual Insurance Company, that appellee Meade Adams is totally disabled and that he is in need of medical services. The issue here, however, is whether the Workmen's Compensation Commission was correct in relieving the appellants from the

obligation of paying Mrs. Meade Adams $65.00 per week for her custodial services. This matter comes to us from an order of the circuit court setting aside the Commission's order and reinstating the payments.

The record shows that as a result of a compensable injury Meade Adams developed depressive neurosis with hysterical symptoms resulting in his total disability. In a prior proceeding the Commission recognized that Mr. Adams needed custodial care and directed appellants to pay Mrs. Adams $65.00 per week for this care. The next proceeding before the Commission arose after appellants had Mr. Adams examined by Dr. John Howard, a psychiatrist.

Mrs. Adams gave a description of Mr. Adams' depressive neurosis, including how he would walk the floor until 2:00 to 3:00 a.m. It is her fear, based upon her observations, that Mr. Adams will commit suicide. When not in one of his depressed periods, Mr. Adams sometimes mows the lawn and will do some work in the garden. On such occasions, however, his hands take on the same appearance that one would expect them to have if they were real cold. Mrs. Adams spends all of her time with Mr. Adams with the exception of five hours each week. On those occasions, she gets some adult member of her family to stay with Mr. Adams while she does the family shopping.

Dr. John G. Howard testified that Mr. Adams was suffering from depressive neurosis with hysterical symptoms and that motivation was one of Mr. Adams' problems. It was his opinion that Mr. Adams should be in a day care program such as that furnished by the State Hospital or a private source such as Cedar Stone Lodge.

Dr. F. M. Westerfield, Mr. Adams' treating psychiatrist testified that Adams was suffering from a depressive neurosis with symptoms of apathy, depression, listlessness and disinclination to engage himself in useful social or industrial activities; that Mr. Adams had no motivation and had a tendency to rely more and more on his wife to make decisions for him; and that the only substitute for the wife's care would be for Mr. Adams to volunteer for the program offered by the

State Hospital or Arkansas Rehabilitation Service. On the question of Mr. Adams volunteering for such programs Dr. Westerfield testified as follows:

> "Q. .... But unfortunately he's got to have some motivation to even volunteer for that, or even accept the suggestion, hasn't he?
>
> A. Yes.
>
> Q. And unfortunately he doesn't have that motivation at this time, does he?
>
> A. No.
>
> Q. Doctor Westerfield, until we come up with something better would you recommend that his wife keep on doing the best she can for him?
>
> A. Is there any way I can side-step that answer?
>
> Q. No, sir, until we can do something better now. I mean this as a practical matter.
>
> . . .
>
> A. He's better off at home with his wife than being a permanent resident of a psychiatric institution. In that way that's the better thing. Still I would like to keep the option of trying some of these other things, if possible."

On redirect examination Dr. Westerfield stated that the resistance to the programs that he had suggested came from Mr. Adams' family; that when he tried to pin Mr. Adams down to take action, Mr. Adams would become so anxious and fearful that he could not bring himself to do it; and that when he approached Mrs. Adams with the idea, she became hurt and resentful, feeling that somehow he was making an attack upon her when that was not the point at all. Dr. Westerfield, while emphasizing that Mr. Adams' lack of motivation did not come from malingering, did acknowledge

that the fact Mrs. Adams was paid for her custodial care reduced or decreased Mr. Adams motivation to do something better.

We have stated the foregoing facts in the light most favorable to the Commission's findings and conclusions, as we must for purposes of determining whether there is any substantial evidence to support the Commission's findings and conclusions. Upon a review of the record we must say that a close issue of fact was presented to the Commission, and we cannot say that the Commission's findings and conclusions are not supported by substantial evidence.

Consequently, it follows that the circuit court erred in setting aside the Commission's order.

Reversed and remanded with directions to reinstate Commission's order.