DRESSER MINERALS et al *v.*
Henry HUNT, Employee, by
Ruth HUNT, Guardian

77-171                                                  556 S.W. 2d 138

Opinion delivered October 10, 1977
(Division I)

*Smith, Williams, Friday, Eldredge & Clark,* by: *George E. Pike,* for appellants.

*Thacker & Kincaid* and *B. W. Sanders,* for appellee.

GEORGE ROSE SMITH, Justice. This is a workmen's compensation case. The claimant, Henry Hunt, was employed by Dresser Minerals as a miner, working underground. On September 13, 1970, a flying sliver of rock penetrated his right eye, eventually resulting in the complete loss of the use of that eye. Hunt suffered so greatly from anxiety and depression as a consequence of the injury that he became totally disabled, physically and mentally. In March of 1973 he was declared incompetent by the Garland Probate Court, Mrs. Hunt being appointed as his guardian.

The first hearing before a referee was had on July 8, 1974. The employer and insurance carrier admitted that Hunt's injury was compensable, but they contested the extent of their liability in several respects. By direct appeal from the circuit court's affirmance of the commission's decision the employer and carrier question three specific findings made by the commission. One of those findings is also challenged by the claimant, by cross appeal.

First, the commission, pursuant to the statute, increased the award of compensation by 15%, because it found that the injury was caused in substantial part by the employer's violation of a safety regulation. Ark. Stat. Ann. § 81-1310 (d) (Repl. 1976). The appellants contend that this additional 15% claim is barred by limitations and that the claimant's proof did not establish a causal connection between the violation and the injury.

The commission correctly denied the plea of limitations. The claim for additional compensation was filed two years and four months after the original injury. Ordinarily the statute of limitations for a claim for disability is two years, but there is this exception: "In cases where compensation for disability has been paid on account of injury, a claim for additional compensation shall be barred unless filed . . . within one year from the date of the last payment of compensation,

or two years from the date of the injury, whichever is greater." § 81-1318 (b). Here compensation was paid from the beginning; so our holding in *Miller* v. *Southern Machine & Iron Works,* 239 Ark. 218, 388 S.W. 2d 391 (1965), is not in point. There no claim of any kind had been filed and nothing had been paid when the claim for wrongful death was filed after the one-year statute for such claims had already run.

We see no reason to treat the 15% claim as so wholly distinct from other claims for additional compensation as to put it in a class by itself, exempting such a claim from the basic rule that a claim for additional compensation is not barred if filed, as this one was, while compensation is actually being paid. Penal statutes, it is true, are to be strictly construed, but there is the countervailing principle that the compensation law is to be liberally construed in favor of the claimant. Furthermore, the great majority of claims for disability are paid as a matter of course, without the claimant's ever having to employ an attorney. The appellants' argument would tend to emasculate the 15% penalty provision, because in many cases (as apparently in this one) the two years would have run before the claimant, whose basic claim was being paid, learned anything about the 15% provision in the statute.

With regard to the causal connection between the safety violation and the injury, there is ample evidence to show that the employer did not have on hand, on the day of the accident, the required type of lenses to protect the miners' eyes from the kind of injury that occurred. In fact, on that very day Hunt had asked for a protective mask, but the proper kind was not available.

Second, the commission awarded Mrs. Hunt $100 a week as compensation for her nursing services in the care of her husband. We do not agree with the appellants' argument that her services were merely custodial and thus not within the statutory reference to "nursing services." § 81-1311. A basic definition of "to nurse" is: "To take care of or tend, as a sick person or an invalid." Webster's New International Dictionary (2d ed., 1934). Another definition is "to tend, or minister to, in sickness or infirmity." Random House Dictionary (unabridged ed., 1966).

In the context of the compensation law, nursing services evidently embrace more than a wife's ordinary care for her sick husband, but that added showing was made here. Dr. Dembinski testified that Mrs. Hunt's care of her husband was probably better than he would have received in a nursing home. He said she had about as much savvy and experience as a registered nurse. "If I were sick she could be my nurse." She gives her husband intramuscular injections, enemas, hot baths, leg and back rubs, and other care that is necessary around the clock, seven days a week. She had to give up a job paying $100 a week in order to devote her entire time to caring for her husband, both an invalid and an incompetent. The $100 weekly award was fully justified by our holding in a somewhat similar case. *Sisk* v. *Philpot*, 244 Ark. 79, 423 S.W. 2d 871 (1968). We are not convinced, as the appellants argue, that the claim for nursing services should be dismissed outright simply because Mrs. Hunt did not at one time make her husband available for a psychiatric evaluation, as an administrative law judge directed. The commission was not asked to enforce such an order, nor was the present contention even mentioned in the commission's opinion.

The commission fixed the beginning date of the weekly award as July 8, 1974, which was the day on which the claim for nursing services was first filed. By cross appeal the appellee argues that some earlier date should have been selected. The commission explained its selection of a somewhat arbitrary date by pointing out that the claimant did not prove by a preponderance of the evidence that the nursing services award should begin on any certain date. That explanation is true. The claimant's evidence was not directed to that precise point. Even now, the argument for some earlier date is based upon testimony about when Hunt first became unable to care for himself. An important date would be that on which Mrs. Hunt had to stop working, but that exact date is not shown. The entire question is one of fact, as to which we cannot say that the commission's determination is not based on substantial evidence.

Finally, the appellants argue that the commission should have deferred any finding that Hunt's disability is permanent as well as total. The commission's opinion was filed in April,

1976, more than five and a half years after the original injury and some five years after the claimant's disability became total. It is now argued that because psychiatric testimony indicates that there is a possibility that psychiatric treatment and counseling might rehabilitate Hunt to the point of his being better able to attend to his own physical needs, the finding of permanent disability should have been deferred even longer than it was. The expert witnesses were, as we read their testimony, dealing in decidedly remote possibilities. There is also some indication that continued uncertainty about the ultimate disposition of Hunt's claim has an adverse effect upon his mental condition. Here, again, the question is essentially one of fact, as to which the commission's decision is unquestionably supported by substantial evidence. It is not our place to substitute our judgment in such matters for that of the commission.

Affirmed.

We agree. HARRIS, C.J., and ROY and HICKMAN, JJ.