PINE BLUFF PARKS AND RECREATION
*v.* Lorenzo PORTER

CA 82-169                                        639 S.W.2d 363

Court of Appeals of Arkansas
Opinion delivered September 22, 1982

*Jerry G. James,* Public Employee Claims Division, Arkansas Insurance Department, for appellant.

*Whetstone & Whetstone,* by: *Bud Whetstone,* for appellee.

GEORGE K. CRACRAFT, Judge. Pine Bluff Parks and Recreation, a department of the City of Pine Bluff, appeals from that portion of a decision of the Arkansas Workers' Compensation Commission which found that it was reasonable and necessary that its injured employee, Lorenzo Porter, be maintained in a facility designed as a residence for paraplegics and in directing it to pay a portion of a stipulated rental for his unit in that facility. Appellant maintains that the finding of the Commission that it was reasonably necessary for appellee to reside there is not supported by substantial evidence and that our Workers' Compensation Law makes no provision for the payment of rent for an injured employee.

It was stipulated before the Commission that on October 21, 1976, appellee was an employee of the appellant and that on that day he sustained a compensable injury which rendered him totally and permanently disabled. It was agreed that the employer had accepted the case as one of permanent disability and had paid all reasonable and necessary medical, surgical, hospital, nursing home and related expenses with the exception of the request for maintaining appellee in a project for paraplegics and quadraplegics known as "Our Way."

The appellee's testimony was that at the time of his injury he was living in Pine Bluff with his wife and seven children in a home which rented for $30 per month. After his injury he was not permitted to return to that home due to marital differences and could not have in any case because the doors and bathrooms were too small and a ramp would have to be built. He further stated that if he did live in that house he would be required to have assistance for various activities which he could not attend to himself.

After his injury the appellee was treated at various

hospitals and clinics and unsuccessfully attended a program of rehabilitation. For nine months he was maintained in a nursing home where all of his basic needs were tended to before returning to the Hot Springs Rehabilitation Program. After leaving there he lived at a private residence for approximately two months where the rent was $90 a month. A friend assisted him with difficulties encountered by his condition but he had to leave there because he was not able to functon properly in that dwelling.

He stated that he had no control of bowel or bladder and that at any time he needed to relieve himself he had a bowel movement. This required him to transfer himself from a wheelchair to the commode which would have to have an elevated seat along with bars on the sides. The bathroom needed to be large enough for him to maneuver his wheelchair into a position stable enough for him to transfer back and forth without falling. Other difficulties were encountered in bathing and showering because he has no muscular support in a sitting position. He was required to take a bath while sitting in the wheelchair or in the shower chair with someone else's assistance.

His difficulty was further complicated by the fact that the doorways in most dwellings are not wide enough to accommodate a wheelchair and that he cannot get up and down steps and required a ramp. He further stated that location of furniture was a problem in maneuvering a wheelchair and doors and hallways had to be at proper angles. While in Hot Springs he had rented a house and the employer had erected a ramp and widened some doors, provided him with a wheelchair and some rails for use in the bathroom facility on which he could raise and lower himself. They had also provided him with a special commode seat, hospital bed, and a trapeze bar for the bed, furnishing everything of that nature that he had requested. He testified that he was required to leave there because he was unable to pay the rent of $175 a month and the owner had indicated to him that the rent would be raised. At that time he became aware of and sought residence in a facility known as "Our Way."

"Our Way" is a building containing 144 apartments designed exclusively to meet the needs of persons with mobility impairment. The building is architecturally barrier free. All stairs have been replaced by ramps and the floor plan is designed for maximum mobility in wheelchairs. Doorways are widened, light switches and thermostats lowered, countertops and counters are all lowered to be accessible to persons in wheelchairs. All showers are large enough for the occupant to bathe himself while sitting in a chair or on a built-in bench. The shower heads are designed for persons with these particular problems. All toilet fixtures are designed to meet the needs of persons confined to wheelchairs. A special intercom system similar to the nurse call system in a hospital has been installed. Emergency cords are located throughout the building. Attendants are on duty at all hours to provide those kinds of assistance peculiar to paraplegics.

There are no doctors or nurses regularly on duty at this facility but those services are available on call. The facility provides three vans equipped with wheelchair lifts in order to take the residents where they need to go in Little Rock. There is a small charge for this service. Attendants are also on duty because of the propensity of paraplegics to fall from a chair or to need some assistance in transferring from wheelchair to bed, toilet or shower. They make regular checks to determine that all occupants are accounted for. The only requirement for admission to the facility is the existence of the mobility impairment and the person's potential independence in taking care of most of his physical needs.

The rent for the apartment occupied by the appellee, which is set by the Department of Housing and Urban Development, was $268 a month. The rent of the occupants is subsidized according to income. After the subsidy formula had been applied the total cost for the use of the apartment for this appellee was $102 per month.

There was testimony from Dr. John Bowker, who had been following appellee's situation for several years. After decribing the facilities available at "Our Way" Dr. Bowker

concluded that the cost of maintaining appellee in that institution was justified because of the special conditions. Dr. Bowker emphasized the desirability of making available the attendant care should the need arise. He further pointed out that falls from chairs resulting in fractures were not uncommon for paraplegics and that the availability of such a system was crucial to the maintenance of such a person in an independent living project. Dr. Bowker concluded that the appellee's living in this facility was preferable to nursing home care.

There was testimony from the administrator of "Our Way" who himself was a quadraplegic and had worked with people with mobility impairment for a number of years. He concluded that if appellee was not maintained in that institution his alternative would be to have nursing home care or home modification and necessary support services from other persons, which would not be required in this facility.

At the conclusion of all the evidence the Administrative Law Judge made the following finding of fact:

> When the testimony is reviewed in this case along with the medical testimony as quoted, I feel there is little doubt but that the requested program for the claimant is reasonable and necessary under the provisions of § 11 under the Arkansas Compensation Law.

He further found that "the greater weight of the evidence included in the record in this case supports the proposition that respondent should be liable for the difference in the rent previously paid by the claimant and his rent at 'Our Way'." These findings and conclusions were affirmed and adopted by the Full Commission and appellant was directed to pay the difference in claimant's previous rent of $30 per month and that which he is now required to pay at "Our Way."

The appellant first contends the evidence does not support the finding of the Commission that the maintenance of appellee in the "Our Way" facility was reasonable and necessary. We find no merit to this contention.

The scope of our review of decisions of the Workers' Compensation Commission is well established. On appeal we are required to review the evidence in the light most favorable to the findings of the Commission and give the testimony its strongest probative value in favor of its order. We will affirm a decision of the Commission if it is supported by substantial evidence. The issue is not whether this court would have reached the same result as the Commission on this record or whether the testimony would have supported another result. The question here is solely whether the findings are supported by substantial evidence. *Bankston* v. *Prime West Corporation*, 271 Ark. 727, 610 S.W.2d 586 (Ark. App. 1981). From our review of the record we conclude that the finding of the Commission that the requested program was reasonable and necessary is supported by substantial evidence.

The appellant next contends that the Commission erred in directing that appellant pay a portion of the rent at "Our Way" because Ark. Stat. Ann. § 81-1311 (Supp. 1981) makes no provision for payment of rent. We conclude that the Commission did err in this order, but not for the reason advanced by the appellant. It is apparent from the findings and conclusions of the Commission that it recognized that, although "Our Way" did supply appellee with apparatus and other services which § 81-1311 makes the employer's obligation, it was aware that appellee also received services in that facility for which the employer had no statutory obligation. The appellant does not question its obligation to furnish ramps, rails, wheelchairs, widened doors, special commodes and shower facilities and other apparatus required by the appellee. It has done so freely and without question at other places where he has resided. It does assert, and the Commission appears to have recognized, that it has no obligation to furnish custodial care, lodging or other non-medical services such as housekeeping. While it is apparent that this difference was recognized we conclude that the Commission took the wrong approach in its apportionment by considering the rent paid on the dwelling occupied by appellee at the time of the injury as a factor. As it was found that housing him at "Our Way" was reasonable and necessary, his rental at his former abode lost all

significance. What was to be apportioned was the cost of maintaining him at his present location.

We conclude that upon finding that it was reasonably necessary for appellee to be housed at "Our Way," the Commission should have made a determination of the portion of the cost attributable to those services and apparatus which are covered by § 81-1311 and that portion attributable to services for which the employer was not liable. The rental on his former home might have been a relevant factor had the apparatus and other services been furnished there.

While we find no cases from our own jurisdiction directly in point we note that our court has recognized apportionment of included and non-included services in the home nursing cases. In *Pickens-Bond Const. Co.* v. *Case,* 266 Ark. 323, 584 S.W.2d 21 (1979) the Supreme Court held that, in determining the value of in-home nursing services rendered by a wife to her disabled husband, those services attributable merely to housekeeping and personal tasks which the claimant is unable to perform are to be excluded and that it was a function of the Commission to differentiate between the two based on the evidence in each particular case. By analogy we conclude that the same rule of apportionment between the value of apparatus and other services required to be furnished under § 81-1311 and the total cost of all services furnished should apply in the circumstances of this case. This case is remanded to the Commission with directions to make a determination as to what portion of the total cost to appellant at the "Our Way" facility is attributable solely to those services and apparatus required to be furnished by the employer under § 81-1311 and to enter its award against the appellant in that amount. In all other respects the order of the Commission is affirmed.

Remanded.