2011 Ark. 31

**Mary HUDAK–LEE, Appellant**

v.

**BAXTER COUNTY REGIONAL HOS-PITAL and Risk Management Resources, Appellees.**

No. 10–212.

Supreme Court of Arkansas.

Feb. 3, 2011.

Kenneth A. Olsen, for appellant.

Walter A. Murray, Little Rock, for appellees.

DONALD L. CORBIN, Justice.

Appellant Mary Hudak–Lee appeals from an order of the Arkansas Workers' Compensation Commission denying her request for workers' compensation benefits based on its finding that at the time of Appellant's injury she was on a lunch break and not advancing the interests of her employer, Appellee Baxter County Regional Hospital ("BCRH"). On appeal, Appellant argues that the Commission's decision that she was not providing employment services at the time of the accident is not supported by substantial evidence. Appellees BCRH and Risk Management Resources, the insurance carrier for BCRH, petitioned this court for review; hence, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(e) (2010). The sole issue on appeal is whether there was substantial evidence to support the Commission's finding that Appellant was not performing employment services at the time of her injury. For the reasons explained below, we reverse and remand.

Appellant has been employed with BCRH since 2006 as a unit secretary. During the early morning hours of January 1, 2008, Appellant was injured after walking outside during her shift. Appellant filed a workers' compensation claim requesting reasonable and necessary medical treatment and temporary total disability benefits. Appellees denied her claim.

A hearing was held before the Administrative Law Judge ("ALJ") on November 5, 2008. Appellant testified that on December 31, 2007, she received a call from Susan Campbell, a clinical coordinator, asking her if she could work the twelve-hour night shift from 7:00 p.m. until 7:00 a.m., even though Appellant was on vacation. She agreed, and at the beginning of her shift, Appellant performed her normal clerical duties. But, around 11:30 p.m., she was asked to provide one-on-one observation of a suicidal patient. At approximately 2:30 a.m., a co-worker offered to relieve Appellant for a short break. Appellant accepted and left the room with the intention of going outside for a few minutes to revive herself in the night air. She explained that she was sleepy because she had awakened early that morning because she was not scheduled to work. According to Appellant, she was not required to clock out before taking her break. She stated that she stopped at the restroom and then took the elevator down to the first floor and exited the hospital through the main entrance. Appellant further stated that she planned to follow the sidewalk to a side entrance near the emergency room. Before making it back inside, she fell. As she hit the ground, Appellant heard a "popping" noise and was in immediate pain. She stated that she could not walk so she used her arms and elbows to drag herself to the emergency-room entrance where she climbed into a wheelchair. Emergency-room staff x-rayed Appellant's hip and discovered that it was broken. A

few hours later, she was taken by ambulance to a hospital in Springfield, Missouri, where she underwent hip-replacement surgery. She remained off work until May 5, 2008, when she returned to BCRH as a unit secretary for the emergency room.

Jessica Brauer, a nurse leader for the 2 West unit, testified that hospital policy requires employees to clock out if they leave the unit on break. She also stated that employees are not supposed to leave the unit during their fifteen-minute breaks because they cannot be called upon to assist with patient needs once they leave the floor. She stated that stepping outside for air would be personal business as it does not further the hospital's interests. But, she later conceded on recross-examination, that if the purpose of the break is to wake oneself and be alert that would benefit the hospital.

Donna Langevin, BCRH's workers' compensation coordinator, testified that she is familiar with Appellant's case. She stated that Appellant was unable to complete an AR–N form after the accident because she was in too much pain, so she gave it to Appellant's husband to complete. He took it and brought it back to Langevin after Appellant signed it. Langevin stated that she is familiar with the employees' manual, and that she agreed with Brauer's testimony regarding hospital policy for employee breaks.

Following the hearing, the ALJ entered an order on January 20, 2009, finding that Appellant's claim was not compensable because she was not performing employment services at the time of the fall. Specifically, the ALJ stated that

while Claimant was unquestionably on break when she fell, she was not "on call" or otherwise available to help patients or to perform any other aspect of her job at the time. She admitted that no means were available to have summoned her to provide aid while she was physically outside the facility. Moreover, she was assigned to "one on one" duty the night of the fall, and was not expected to be part of any code blue team—a job she had performed on other occasions. She did not know if she could be required to cut her break short to perform a job-related task....

Claimant has sought to portray her use of the break time to get some "fresh air" in order to stay awake for her "one on one" duty as benefitting the hospital. This, however, ignores the fact that Claimant could have engaged in other activities to accomplish this that would have kept her available to render aid during her break. In addition to confining her area of walking to the vicinity of her assignment, as the policy dictates, Claimant could have availed herself of the free coffee or caffeinated drinks in the nearby vending machine in order to regain alertness. Her actions in leaving the building, which the evidence shows required that she clock out, essentially placed her on her lunch break. Certainly, she was not carrying out the employer's purpose or advancing the employer's interest, directly or indirectly, at the time of the fall.

■ The Commission entered an order on June 8, 2009, affirming and adopting the decision of the ALJ after finding that it was supported by a preponderance of the evidence and correctly applied the law.[1] Appellant appealed the Commis-

---

1. The decision of the Commission was by a 2–1 vote. The dissenting commissioner concluded that the ALJ's decision was based on a flawed analysis in that he focused on whether Appellant was required to clock out when she left the building. The dissenting commissioner opined that the critical inquiry was whether Appellant was performing an employment

sion's decision to the Arkansas Court of Appeals, arguing that the decision was not supported by substantial evidence. The court of appeals reversed the Commission's decision, holding that Appellant's claim was compensable because at the time of her injury she was performing a function that advanced the interests of BCRH. *See Hudak–Lee v. Baxter County Reg'l Hosp.*, 2010 Ark.App. 121, 2010 WL 475354. We subsequently granted BCRH's petition for review. When we grant review of a decision by the court of appeals, we review the case as though the appeal had originally been filed in this court. *Stewart v. Ark. Glass Container*, 2010 Ark. 198, 366 S.W.3d 358.

On appeal, this court views the evidence and all reasonable inferences therefrom in the light most favorable to the Commission's decision and affirms that decision when it is supported by substantial evidence. *Honeysuckle v. Curtis H. Stout, Inc.*, 2010 Ark. 328, 368 S.W.3d 64. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* There may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we had sat as the trier of fact or heard the case de novo. *Id.* It is exclusively within the province of the Commission to determine the credibility and the weight to be accorded to each witness's testimony. *Id.* We will not reverse the Commission's decision unless we are convinced that fairminded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Cedar Chem. Co. v.*

*Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008).

The sole issue on appeal is whether there was substantial evidence supporting the Commission's conclusion that Appellant was not performing employment services at the time of her injury. Appellant argues that the Commission erred in its findings of fact and application of the law regarding employment services. Specifically, Appellant asserts that the determination that she was at lunch at the time of her fall and, thus, not providing employment services was erroneous. We agree.

In order for an accidental injury to be compensable, it must arise out of and in the course of employment. Ark.Code Ann. § 11–9–102(4)(A)(i) (Supp.2009). A compensable injury does not include an injury that is inflicted upon the employee at a time when employment services are not being performed. Ark.Code Ann. § 11–9–102(4)(B)(iii) (Supp.2009). The phrase "in the course of employment" and the term "employment services" are not defined in the Workers' Compensation Act. *Texarkana Sch. Dist. v. Conner*, 373 Ark. 372, 284 S.W.3d 57 (2008). Thus, it falls to the court to define these terms in a manner that neither broadens nor narrows the scope of the Act. *Id.*

An employee is performing employment services when he or she is doing something that is generally required by his or her employer. *Id.; Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002). We use the same test to determine whether an employee is performing employment services as we do when determining whether an employee is acting within the course and scope of employment. *Jivan v. Econ. Inn & Suites*, 370 Ark. 414, 260 S.W.3d 281 (2007). The test is whether

service at the time of her injury, which he concluded she was doing.

the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest, directly or indirectly. *Id.* In *Conner*, 373 Ark. 372, 284 S.W.3d 57, we stated that where it was clear that the injury occurred outside the time and space boundaries of employment, the critical inquiry is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury. Moreover, the issue of whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case. *Id.*

It is axiomatic that questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Knight*, 372 Ark. 233, 273 S.W.3d 473. As such, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Id.; Arbaugh v. AG Processing, Inc.*, 360 Ark. 491, 202 S.W.3d 519 (2005). Here, however, there was no evidence presented to contradict Appellant's testimony that her purpose in going outside was to revive herself so that she could complete her shift. In other words, there was simply no evidence introduced to support the Commission's finding that Appellant was injured while on a lunch break. This finding appears to result from the testimony that employees are required to clock out if they leave their assigned unit.

The question of whether Appellant was required to clock out before taking her break is not dispositive of the issue in this case, namely, whether Appellant was furthering the interests of her employer at the time of her injury, such that she was performing employment services at that time. This court has previously recog-

nized that an injury is compensable even when an employee was on break or had not yet clocked in as long as the employee was performing employment services at the time the injury occurred. *Jonesboro Care & Rehab Ctr. v. Woods*, 2010 Ark. 482, 2010 WL 5059566 (holding that an employee was performing employment services when she stepped outside for a break while attending a mandatory seminar and was required to wait afterward to complete paperwork and pick up her paycheck); *Conner*, 373 Ark. 372, 284 S.W.3d 57 (holding that an injury sustained by a janitor while opening a gate to a school parking lot upon returning from his lunch break was compensable because the janitor was performing employment services); *Wallace v. West Fraser South, Inc.*, 365 Ark. 68, 225 S.W.3d 361 (2006) (holding that an employee injured while walking back to his work site after a break was performing employment services at the time of his injury particularly where he was not allowed to leave the workplace area during break); *Collins v. Excel Specialty Prods.*, 347 Ark. 811, 819, 69 S.W.3d 14, 20 (2002) (holding that an employee's injury, suffered while taking a restroom break, was compensable, because the "restroom break was a necessary function and directly or indirectly advanced the interests of the employer"); *White v. Georgia–Pac. Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999) (holding that an employee's injuries were compensable because the employee was required to monitor his work area while he was taking a smoke break and was thus performing employment services).

In the instant matter, the Commission failed to conduct the proper inquiry into whether Appellant was performing employment services at the time of her injury by determining whether she was directly or indirectly advancing the interests of her employer. It was undisputed that Appellant had been called in to work a twelve-

hour shift on her day off and part of the way through that shift was asked to sit in a darkened room to keep watch $|_9$over a suicidal patient. In fact, the ALJ found in his opinion, which was adopted by the Commission, that Appellant had been awake for over twenty hours because she had not anticipated working that evening and while in the patient's room, there was no television, telephone, magazines, or other diversion to enable her to stay awake. Appellant testified that she walked outside to revive herself so that she could complete her shift. It was also undisputed that Appellant was walking toward the emergency-room entrance in order to return to the patient's room when she fell. Clearly, at the time of her injury, Appellant was advancing the interests of her employer, and the Commission's finding that Appellant was not performing employment services was not supported by substantial evidence.

Decision of the Arkansas Workers' Compensation Commission reversed and remanded; opinion of the Arkansas Court of Appeals vacated.