2011 Ark. App. 755

**David PACK, Appellant**

v.

**LITTLE ROCK CONVENTION & VISITORS BUREAU and Risk Management Resources, Appellees.**

**No. CA 11–314.**

Court of Appeals of Arkansas.

Dec. 7, 2011.

Thomas W. Mickel, Conway, for appellant.

Betty J. Hardy, Little Rock, for appellee.

DAVID M. GLOVER, Judge.

Appellant David Pack suffered an idiopathic injury while working for appellee Little Rock Convention and Visitors Bureau on April 16, 1991, resulting in an award of benefits. *Little Rock Convention & Visitors Bureau v. Pack,* 60 Ark.App. 82, 959 S.W.2d 415 (1997) (*Pack I*). His case now returns on appeal from the Commission's finding that his employer and its insurance carrier, Risk Management Resources, are not liable for long-term-care expenses at Timber Ridge Ranch (*Pack II*). On the facts presented, the ALJ determined that the services provided at Timber Ridge qualified as nursing services for which appellees were responsible, but the Commission reversed the ALJ, finding that Pack had failed to prove that residential placement at Timber Ridge qualified as compensable nursing care; Pack now appeals this decision. We affirm the Commission's decision that Pack failed to prove that residential placement at Timber Ridge qualified as compensable nursing care.

In *Nabholz Construction Corp. v. Gates,* 2010 Ark.App. 182, at 1, 2010 WL 653563, this court set forth our standard of review in workers' compensation cases:

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Whitlatch v. Southland Land & Dev.,* 84 Ark.App. 399, 141 S.W.3d 916 (2004). Substantial evidence is that relevant evidence which reasonable minds might accept as adequate to support a conclusion. *K II Constr. Co. v. Crabtree,* 78 Ark. App. 222, 79 S.W.3d 414 (2004) [ (2002) ]. The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Geo. Specialty Chem., Inc. v. Clingan,* 69 Ark.App. 369, 13 S.W.3d 218 (2000).

Arkansas Code Annotated section 11–9–508(a) (Supp.2009) requires an employer to provide an injured employee such medical services "as may be reasonably necessary in connection with the injury received by the employee." The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Stone v. Dollar Gen. Stores,* 91 Ark.App. 260, 209 S.W.3d 445 (2005). What constitutes reasonable and necessary medical treatment is a question of fact to be determined by the Commission. *Bohannon v. Wal–Mart [Walmart] Stores, Inc.,* 102 Ark.App. 37, 279 S.W.3d 502 (2008).

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive

province of the Commission. *Cedar Chemical Co. v. Knight,* 372 Ark. 233, 273 S.W.3d 473 (2008). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief; this court is foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Id.* The Commission has the authority to accept or reject a medical opinion and the authority to determine its probative value. *Poulan Weed Eater v. Marshall,* 79 Ark.App. 129, 84 S.W.3d 878 (2002).

As a result of the 1991 injury, Pack suffered an organic brain injury and is permanently and totally disabled. In *Pack I,* this court affirmed the Commission's finding of a compensable injury on direct appeal and also affirmed the finding on cross-appeal that Pack's mother, with whom Pack lived on a full-time basis, was not entitled to payment for nursing services. Pack's mother testified that she had to give Pack "verbal cues" to perform tasks such as bathing, dressing, and other personal care because Pack was not likely to do those things without prompting; however, she was able to leave Pack at home unattended while she worked until midday.

Pack lived with his mother until her death in 2003; he then moved in with his mother's sister, Katherine, now sixty-five, and her husband, Clem Volpert, now sixty-eight, who are his legal co-guardians. Katherine Volpert testified that she and

her husband had put off attempting to find a long-term care facility, but that they now would like to get their nephew into long-term care soon because Katherine's health was not good and she did not want to leave him "out in the field like his mother did." For this reason, she stated that she and her husband sought an alternative placement for Pack in long-term care at Timber Ridge.

Mrs. Volpert testified that nothing had changed with her nephew's condition since he had come to live with her and her husband in February 2003, except that his personal appearance had improved and he no longer smoked. She confirmed that Pack could care for his basic hygiene, but that he had to be reminded verbally to perform such tasks, including bathing, combing his hair, using the toilet, and brushing his teeth. She also stated that he could make his bed and dress himself if she told him what to do. She said that he did not prepare any meals, and that she and her husband did not leave him alone.[1]

Dr. Gary Souheaver, a clinical neuropsychologist, testified that Pack was going to require constant verbal and visual reminders to function in routine activities. He stated that, while Pack's IQ had diminished fifteen points since his accident in 1991, Pack was clearly not "nursing-home material," that he did not need twenty-four-hour care, and that he was able to stay by himself for short periods of time. It was Dr. Souheaver's opinion that Pack would benefit from the most independent setting consistent with his abilities—possibly a group-home setting where he would have someone to help with grooming, bathing, laundry, housekeeping, meal preparation, shopping, health needs, and transporta-

---

1. In *Pack I,* there was evidence that Pack's mother left him alone while she worked from 5 a.m. to 1 p.m. while he was living with her.

tion—and he also believed that Pack was capable of working in a structured, sheltered-workshop setting.

Robbie McDaniel, the administrator at Timber Ridge, a post-acute brain-injury-rehabilitation and residential-care facility, stated that the facility offered supported-living services to match its clients' functional capabilities. The goal at Timber Ridge, according to McDaniel, is to provide the highest quality of life capable to the individual, to provide meaningful activities on a daily basis, to provide professional services in nursing or medical care with monitoring on an ongoing basis, and to try to prevent functional regression over a period of time. McDaniel testified that nursing services were available twenty-four hours a day, seven days a week. According to McDaniel, the daily rate for Pack would be $600 per day, which included room and board, any of the therapies, counseling, supervision needs, transportation, behavioral observation, and, if needed, behavioral intervention. This per diem rate did not include medication or outside medical consultation. However, even after repeated questioning, McDaniel was unable or unwilling to break down the $600 per diem from a comprehensive rate to its individual components.

Pack contends that Timber Ridge's services qualify as nursing services and as such, should be compensable under *Pine Bluff Parks & Recreation v. Porter*, 6 Ark. App. 154, 639 S.W.2d 363 (1982). We disagree. In *Porter*, the Commission found that it was reasonable and necessary for appellee Lorenzo Porter to be maintained in a residential facility for paraplegics, and that the employer was responsible for paying a portion of the rent for Porter's apartment in that facility. This court remanded to the Commission, finding that while it was reasonably necessary for Porter to be housed at the facility designed for paraplegics, the Commission had to determine the portion of costs attributable to nursing services and medical apparatuses (the facility had special accommodations for paraplegics, such as ramps, lower light switches and counters, wider doorways for wheelchairs, specially designed bathrooms, and intercom systems), and services that were not covered, such as custodial care, lodging, and other nonmedical services such as housekeeping.

Porter's case is different because, as a paraplegic, there were certain medical services that he had to have. However, in Pack's case, the services he needs are not nursing services. As noted in *Pack I*,

> The supreme court has said that the services contemplated under "nursing services" are those rendered in tending or ministering to another in sickness or infirmity. *Pickens–Bond Constr. Co. v. Case*, 266 Ark. 323, 584 S.W.2d 21 (1979). Nursing services do not include assistance with household and personal tasks which the claimant is unable to perform. *Pine Bluff Parks & Recreation v. Porter*, 6 Ark.App. 154, 639 S.W.2d 363 (1982); *Pickens–Bond Constr. Co., supra*. Benefits for nursing services have been allowed where the services consisted of medical care, including changing bandages and cleaning a wound, (*Tibbs v. Dixie Bearings, Inc.*, 9 Ark.App. 150, 654 S.W.2d 588 (1983)), giving injections, enemas, and hot baths, (*Dresser Minerals v. Hunt*, 266 [262] Ark. 323 [280], 584 [556] S.W.2d 21 [138] (1979)), physical therapy, (*Wasson v. Losey*, 11 Ark.App. 302, 669 S.W.2d 516 (1984)), and where the claimant was mentally and physically helpless with no control over bodily functions and needed twenty-four hour per day care (*Sisk v. Philpot*, 244 Ark. 79, 423 S.W.2d 871 (1968)).

60 Ark.App. at 90, 959 S.W.2d at 419–20.

This court held in *Pack I* that while the doctors noted that he needed "encourage-

ment" to perform personal tasks and that his mother testified that she assisted him in daily tasks and housekeeping, these were not nursing services. In the present case, *Pack II*, the testimony from Pack's aunt was that his situation has not changed since he lived with them as far as the help he required; likewise, Dr. Souheaver stated that Pack did not need to be placed in a nursing home. There was no testimony that Pack required what has been defined in our case law as "nursing services"; instead, he needs verbal cues to bathe, brush his teeth, comb his hair, and get dressed. He also needs help with housekeeping, financial matters, transportation, and meal preparation.

The dissent contends that Pack would benefit from some of the therapies offered at Timber Ridge; however, that is not the reason the Volperts sought out Timber Ridge for their nephew—they simply need an appropriate place for him to live. While the dissent is of the opinion that the Volperts' motives are not germane to the issue on appeal, we disagree. Nowhere in Mrs. Volpert's testimony does she contend that Pack needs cognitive therapy—rather, she said that her health was not good, they did not want to leave Pack "out in the field," and that is why they sought out long-term care.

Furthermore, even assuming that the therapies offered at Timber Ridge are in the realm of nursing services and not simply "cues," Timber Ridge's administration declined to carve out the costs of such therapies from other non-nursing services, even after being asked repeatedly to do so. Those asking on behalf of Pack had the opportunity to have the value of the services determined at the hearing, which they failed to do; they therefore cannot now ask for the Commission's decision to be reversed for a "second bite at the apple." The dissent asserts that the Commission could simply assign a value to the service at Timber Ridge that it considers to be nursing services—somewhere between zero and six hundred dollars a day. However, without any factual basis for the number—which Timber Ridge was either unable or unwilling to provide—any determination would be arbitrary and speculative. This opinion does not foreclose the medication monitoring or medical attention Pack may require—it simply declines to require the appellees to provide non-nursing services.

On the matter presented to the Commission, we cannot say that the Commission erred in finding that the services Pack requested do not constitute "nursing services" under our law.

Affirmed.

VAUGHT, C.J., and PITTMAN, ROBBINS, and ABRAMSON, JJ., agree.

HART, MARTIN, HOOFMAN, and BROWN, JJ., dissent.

DOUG MARTIN, Judge, dissenting.

I respectfully dissent from the majority's opinion. I would reverse and remand this case for the Commission to determine which services offered by Timber Ridge would be provided for the purpose of "tending or ministering to" David Pack's compensable brain injury and award an appropriate amount attributable solely to those services that qualify as nursing services.

In addition to finding that the employer is not liable for residential placement at Timber Ridge, the Commission found that "ongoing therapeutic, recreational, and educational activities" offered by the facility are not "nursing services." While I agree with the majority that the employer is not liable for "residential placement" at Timber Ridge, to the extent that refers to lodging, I think it is entirely too broad to assert that Timber Ridge provides *no ser-*

*vices* that qualify as compensable nursing services. I recognize that, under current statutory law, the employer is not liable for custodial care; however, I believe that medication evaluation and monitoring and those services aimed at stabilizing Pack's cognitive regression and maintaining his current level of mental functioning qualify as compensable nursing services. Medical treatments that are required to stabilize or maintain an injured worker are the responsibility of the employer. *Martin Charcoal, Inc. v. Britt*, 102 Ark.App. 252, 284 S.W.3d 91 (2008) (citing *Artex Hydrophonics, Inc. v. Pippin*, 8 Ark.App. 200, 649 S.W.2d 845 (1983)).

The majority focuses much of its attention on the Volperts' apparent motives for seeking services from Timber Ridge and on the assertion that Pack's condition has not changed since this court's opinion in *Pack I*, 60 Ark.App. 82, 959 S.W.2d 415 (1997), in that Pack still requires verbal intuitively know to do. I do not believe these particular concerns are germane to the issue on appeal, which is whether there is any substantial evidence from which the Commission could conclude that none of the services provided by Timber Ridge qualify as compensable nursing services entitling Pack to an award of benefits. I do not think the Commission's decision displays a substantial basis for the denial of relief.

Dr. Gary Souheaver's examination of Pack in 2007 revealed that Pack is "cognitively quite handicapped" and has "very impaired memory." Following his brain injury in 1991, Pack's full-scale IQ was 80, which was classified as below average, and by 2007, Pack's full-scale IQ had dropped fifteen points to the clinically retarded level. The majority suggests that Pack's condition has not changed much between 1997 and today. I cannot agree in light of Dr. Souheaver's undisputed testimony regarding Pack's fifteen-point drop in his full-scale IQ.

Cited in the Commission's opinion is Dr. Stevens's assessment of Pack in 1991, wherein Dr. Stevens states, "At some point in the not to [sic] distant future I would recommend that [Pack] be placed in a head injury rehabilitation center, where he can receive intensive retraining that may assist him in recovering some cognitive abilities." Timber Ridge offers precisely this type of retraining from which Pack could benefit.

Timber Ridge Administrator Robbie McDaniel testified that the goals at Timber Ridge include providing "professional services in nursing or medical care and monitoring that [residents] will need on an ongoing basis, and to try to do the best we can to prevent functional regression over a period of time." McDaniel expounded, "We encourage them to be involved in cognitive tasks to work their brains, to do things and to not just sit." It seems clear to me that Timber Ridge provides services aimed at "tending or ministering to" Pack's brain injury, which is Arkansas's legal definition of "nursing services." This court has noted that "nursing services" are those rendered in tending or ministering to another in sickness or infirmity. *Dresser Minerals v. Hunt*, 262 Ark. 280, 556 S.W.2d 138 (1977).

At the very least, Timber Ridge provides medication evaluations and monitoring, which I believe qualify as "nursing services," given that these services require some degree of medical skill and training. Dr. Souheaver specifically testified that Pack needs "to be evaluated with respect to his medications on a fairly regular basis. . . ." Further, I believe that, *in the context of a brain injury,* "cognitive orientation" and other "cognitive tasks" provided as "ongoing therapeutic activities," as described by McDaniel, should be considered compensable "nursing services" as well. External treatments such as band-

aging, wound cleaning, injections, hot baths, physical therapy and other traditional nursing services recognized by this court will neither relieve Pack's symptoms nor improve his mental status. Rather, Pack needs cognitive treatment for his brain injury. Pack's need for verbal cues, his significantly impaired memory, and his marked cognitive regression are undoubtedly attributable to the compensable brain injury Pack suffered in his employment for Little Rock Convention & Visitors Bureau in 1991. It follows that the employer should be liable for cognitive treatment Pack would receive at Timber Ridge.

Finally, the majority points to Dr. Souheaver's testimony that Pack does not need to be placed in a nursing home. Although care at Timber Ridge is available on a twenty-four-hour basis, Timber Ridge is not a nursing home. It is a post-acute brain injury treatment and rehabilitation facility with a program specializing in care for the considerable limitations Pack faces every day as a result of his brain injury.

The majority writes that, "even assuming that the therapies offered at Timber Ridge are in the realm of nursing services and not simply 'cues,' Timber Ridge's administration declined to carve out the costs of such therapies from other non-nursing services." Although the majority sees no basis, in law or fact, upon which the Commission may determine the value of the nursing services offered at Timber Ridge, I respectfully disagree. Despite McDaniel's inability to dissect the facility's comprehensive per-diem rate $|_{12}$of $600, I think the Commission is perfectly capable of assigning a monetary value to all aspects of care provided by Timber Ridge. In fact, this court ordered the Commission to do precisely that in *Porter, supra,* cited by the majority, when it remanded the case to the Commission "with direction to make a determination as to what portion of the total cost to appellant at the 'Our Way' facility is attributable solely to those services and apparatus required to be furnished by the employer under § 81–1311 and to enter its award against the appellant in that amount." *Porter,* 6 Ark.App. at 160, 639 S.W.2d at 366–67. Likewise, in *Tibbs v. Dixie Bearings, Inc.,* 9 Ark.App. 150, 654 S.W.2d 588 (1983), this court reversed and remanded with directions to the Commission to determine the amount of compensation to be awarded for nursing services. I do not believe a "second bite at the apple" is necessary because McDaniel's testimony provides an adequate range to assist the Commission in determining the value of services provided by Timber Ridge, i.e., somewhere between zero and six hundred dollars.

I would reverse the Commission's ruling that Timber Ridge does not offer any compensable nursing services for Pack because I believe medication monitoring is a nursing service and that cognitive activities that could help stabilize and maintain Pack's current level of brain function should be compensable as well, especially when giving the workers' compensation chapter a liberal construction in accordance with its remedial purposes under Act 10 of 1986, Second Extraordinary Session, codified at Arkansas Code Annotated section 11–9–704(c)(3) (1987).[2] Further, I believe this court has the authority to $|_{13}$remand this case for the Commission to determine what portion of Timber Ridge's per-diem rate is attributable solely to compensable nursing services.

I respectfully dissent.

HART, HOOFMAN, and BROWN, JJ., join.

---

**2.** Given that the injury occurred in 1991, the   law in effect at that time governs.