2013 Ark. 186

**David PACK, Appellant**

v.

**LITTLE ROCK CONVENTION CENTER & VISITORS BUREAU and Risk Management Resources, Appellees.**

No. 11–1287.

Supreme Court of Arkansas.

May 2, 2013.

Reversed and remanded; Court of Appeals' opinion vacated.

See also 60 Ark.App. 82, 959 S.W.2d 415.

Brazil, Adlong & Mickel, PLC, Conway, by Thomas W. Mickel, for appellant.

Coplin, Hardy & Stotts, PLLC, by Betty J. Hardy, Little Rock, and Charlotte A. Allen, for appellees.

KAREN R. BAKER, Justice.

On April 16, 1991, the thirty-one-year-old Appellant, David Pack, was employed as a maintenance worker by the Appellee, Little Rock Convention and Visitors Bureau ("the employer"), when he suffered a compensable work-related brain injury. The parties stipulated that Pack is permanently and totally disabled.

After his injury, Pack lived with his mother who served as his care giver.

Pack filed a workers' compensation claim seeking benefits and also requested benefits for the nursing care services his mother was providing. The Arkansas Workers' Compensation Commission ("the Commission") found that Pack's injury was compensable but denied the requested nursing services benefits. The court of appeals affirmed the Commission's determination in *Pack I,* finding that the injury was compensable and denied the additional benefits for nursing-services for Pack's mother as his mother "only assists him in his daily tasks and housekeeping, and does not provide any medical care to Pack." *Little Rock Convention & Visitors Bureau v.* |₂*Pack (Pack I),* 60 Ark.App. 82, 91, 959 S.W.2d 415, 420 (1997). At the time of *Pack I,* Pack was able to stay at home for periods of time by himself when his mother went to work. However, Pack was incapable of living alone and taking care of himself.

Pack continued to live with his mother until her death in 2003. Since her death, Pack has lived with his maternal aunt and uncle, Katherine and Clement Volpert, who are his legal guardians. In 2006, the Volperts made a second request for additional benefits for Pack in the form of nursing services at an assisted living facility, specifically, Timber Ridge Ranch Neurorestorative Center ("Timber Ridge") in Benton, Arkansas, to receive long-term care. The Volperts' request was based on Pack's deterioration and their advancing age and inability to care for Pack. The employer opposed the additional benefits arguing that the benefits were not qualified nursing services under the law.

■ The case was submitted again to an Administrative Law Judge ("ALJ") for a decision on Pack's entitlement to "nursing services." On July 14, 2010, the ALJ found that Pack was entitled to nursing services and the services at Timber Ridge were "nursing services." On January 13, 2011, the Commission reversed the ALJ's decision on the "nursing services," and denied Pack benefits, finding that the services at Timber Ridge Ranch were not nursing services as defined by the law. Pack appealed the Commission's findings to the court of appeals which affirmed the Commission's findings in *Pack v. Little Rock Convention & Visitors Bureau ("Pack II"),* 2011 Ark. App. 755, 387 S.W.3d 260. On June 14, 2012, we accepted Pack's petition for review of the case. Upon granting a petition for review, this court considers the appeal as if it had been originally filed in this court. *Smith v. Rebsamen Med.* |₃*Ctr., Inc.,* 2012 Ark. 441, 424 S.W.3d 876.

■ For his sole point on appeal, Pack asserts that the Commission erred in finding that the services at Timber Ridge are not nursing services within Ark.Code Ann. § 11–9–508(a) (1987) and the Commission's decision is not supported by substantial evidence.

■ Our standard of review for workers' compensation claims is clear. We view the evidence in the light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. *Hudak–Lee v. Baxter Cnty. Reg'l Hosp.,* 2011 Ark. 31, 378 S.W.3d 77. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* Substantial evidence is "evidence that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other." *Aluminum Co. of Am. v. McClendon,* 259 Ark. 675, 687, 535 S.W.2d 832, 838 (1976). On review, the issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the

Commission. *Hudak–Lee*, 2011 Ark. 31, 378 S.W.3d 77.

■ Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Cedar Chem. Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.*

Finally, in reviewing Pack's appeal, we must apply the law that was in effect at the time of Pack's injury. Applying the law as in effect in 1991, Act 10 of 1986 requires the court to ⌊4construe the Workers' Compensation Act liberally; "[a]dministrative law judges, the commission, and any reviewing courts shall construe the provisions of this chapter liberally, in accordance with the chapter's remedial purposes." Act 10 of 1986 (2nd Ex. Sess.) (codified as amended at Ark.Code Ann. § 11–9–704(c)(3), (4) (1987) (formerly Ark. Stat. Ann. § 81–1323(c) (Supp.1985))).[1]

With these standards identified, we now turn to the issue presented whether the services at Timber Ridge are nursing services under Ark.Code Ann. § 11–9–508 (1987) and whether there is substantial evidence to support the Commission's decision.

Section 11–9–508(a) provides in pertinent part: "[t]he employer shall promptly provide for an injured employee such medical … and nursing services … as may be reasonably necessary for the treatment of the injury received by the employee." In other words, the employer is responsible for those nursing services that are reasonably necessary in connection with the sustained injury.

We have addressed the term nursing services under Ark.Code Ann. § 11–9–508, formerly Ark. Stat. § 81–1311, on several occasions. We have held that services contemplated under nursing services are those rendered in tending or ministering to another in sickness or infirmity. *Dresser Minerals v. Hunt*, 262 Ark. 280, 556 S.W.2d 138 (1977). In *Dresser Minerals*, we addressed the nursing services as provided by a spouse and rejected the claim that the claimant's wife care was merely custodial. We explained "[i]n the context of the ⌊5compensation law, nursing services evidently embrace more than a wife's ordinary care for her sick husband." *Id.* at 284, 556 S.W.2d at 140. We explained that " 'to nurse' is: '[to] take care of or tend, as a sick person or an invalid.' *Webster's New International Dictionary* (2d ed., 1934). Another definition is 'to tend, or minister to, in sickness or infirmity.' *Random House Dictionary* (unabridged ed., 1966)." *Dresser Minerals*, 262 Ark. at 283, 556 S.W.2d at 140. Applying this definition, we held that the claimant's wife administering intramuscular injections, enemas, hot baths, and leg and back rubs, were nursing services.

In *Pickens–Bond Constr. Co. v. Case*, 266 Ark. 323, 584 S.W.2d 21 (1979), we also held that the claimant was entitled to an award for nursing services his wife provided. In that case, the claimant suffered a compensable injury to his legs and hip and required assistance with bathing, linen changing, and changing clothes. Specifically, the claimant's wife assisted the claimant with "some of his required exercises, helping him to put on rubber pants he wears because of urinary incontinence,

---

1. While we construe the provisions liberally in this case, we note that our analysis would remain the same using today's strict construction. *See* Ark.Code Ann. § 11–9–704(c)(3) (Repl.2012).

changing his bed and pajamas when he has a urinary or bowel 'accident' during the night, and perhaps, helping him dry after a bath." *Id.* at 335, 584 S.W.2d at 27. In that case, we allowed these benefits as compensable nursing services, and we remanded the case to the Commission to determine the amount of time that the services were considered compensable nursing services because the claimant could be left alone and did not require constant supervision.

Further, in *J.P. Price Lumber Co. v. Adams,* 258 Ark. 630, 527 S.W.2d 932 (1975), we affirmed the denial of continued nursing services rendered by the claimant's wife solely based on evidence that the claimant needed supervision because he was depressed and suicidal. In that case, the claimant's wife was awarded payment for her "custodial services" of the claimant until it was determined the claimant was in need of rehabilitative services and would likely improve his condition if he was in a rehabilitative setting. The record in *J.P. Price Lumber Co.* demonstrated that the claimant suffered depressive neurosis with hysterical symptoms resulting in his total disability and was in need of custodial care. The claimant's wife was paid for that custodial care as part of the claimant's medical services until the point at which the evidence demonstrated the claimant would benefit in a rehabilitative setting. Stated differently, custodial services were allowed until the claimant required a different environment.

Finally, in *Sisk v. Philpot,* 244 Ark. 79, 423 S.W.2d 871 (1968), we affirmed the Commission's finding that a parent's care for his adult claimant son qualified as compensable nursing services, where the claimant was mentally and physically helpless with no control over his bodily functions and required twenty-four-hour per-day care.

Accordingly, precedent establishes that spouses or relatives of an injured employee are entitled to compensation for nursing services. However, in the case before us, there are no spousal nursing services, and no need to analyze any division between spousal services and nursing services. The issue is whether the Timber Ridge services are nursing services under our interpretation of nursing services under Ark.Code Ann. § 11–9–508.

In reviewing the Commission's findings, the Commission found that the services provided at Timber Ridge were not encompassed within the court's interpretation of nursing services as provided in Ark.Code Ann. § 11–9–508(a). In its findings, the Commission stated:

> The Full Commission finds that placing David Pack in Timber Ridge Neurorestorative Center does not qualify as "nursing services" as defined by Arkansas' appellate courts. We note that the Proposed Plan Of Care at Timber Ridge included primarily a Supported Living program "with ongoing therapeutic, recreational, and educational activities for clients who are unable to return to the family or community living." We find that such activities at Timber Ridge do not qualify as "nursing services." *See Pine Bluff Parks & Recreation, supra....* The record in the present matter does not demonstrate that the Supported Living program at Timber Ridge qualifies as nursing services.

Pack asserts that the Commission's finding is not supported by substantial evidence because the Timber Ridge services are nursing services as the services provide indivisible attendant and nursing services that qualify as nursing services as are encompassed in Pack's medical-treatment plan. Relying on *Pickens–Bond* and *Pine Bluff Parks & Recreation v. Porter,* 6 Ark.App. 154, 639 S.W.2d 363 (1982), the

employer responds that the Timber Ridge Service's are non-compensable custodial services as the services are general services including assistance with household and personal tasks. We disagree with the employer's interpretation and hold that the Commission's decision is not supported by substantial evidence.

The record demonstrates that Katherine Volpert testified that Pack can dress himself, groom himself, and perform small chores like making his bed, but only when prompted. She further testified that one must remain present in the room with Pack when performing tasks to ensure that Pack does not injure himself, and that he completes the task. She further testified that Pack can never be left alone, is not able to cook or prepare meals, and may wander away. Volpert also testified that Pack is incontinent and must be assisted with reminders related to cleaning, showering, and changing clothes due to his incontinence. Volpert further testified that she attempted to enroll Pack in classes at an adult day care center, but the facility refused to admit Pack because Pack had been there before and wandered away. Volpert also testified she administers daily medications to Pack.

Dr. Souheaver, a board certified clinical neuropsychologist, testified that Pack was "significantly impaired" and not "self directed." Souheaver further testified that Pack's IQ has deteriorated from an 80 in 1991, classified as a low average or borderline retarded, to a 65 in 2007, a retarded level. Souheaver testified that Pack's decline was not a normal sign of aging. He further testified that Pack could not live alone and needs constant reminders and cues to perform chores and would need constant reminders to take medications. He also testified that Pack was very likeable and cooperative, but that Pack's disabilities or cognitive level of function are the type that you would not want to make angry because he would likely act impulsively and out of control. Finally, Souheaver also testified that Pack was a good candidate for assisted-living arrangements.

Robbie McDaniel, administrator at Timber Ridge, testified that its supported-living facility where Pack would be housed has brain-injury trained staff available 24 hours a day, 7 days, a week. Additionally, McDaniel testified that a nurse is stationed in the facility, and a physician is also on staff. Further, a dietician is on staff to monitor weight and nutritional status. McDaniel further testified that Timber Ridge would administer a medical plan designed by medical doctors and psychologists, providing a structured program for Pack's care and attempt to prevent any additional regressions. The record demonstrates that Timber Ridge's "Proposed Plan of Care" for Pack would be designed by its medical director and implemented under his supervision and monitoring. The plan provides:

> In the Supported Living program, Mr. Pack will be involved in physical conditioning activities to maintain strength, endurance, and overall physical fitness. He will receive necessary opportunities to facilitate increased independence in daily living skills to include higher level residential activities such as room upkeep and laundry. Mr. Pack will participate in a Functional Activities setting as well as community access outings. Activities will emphasize and reinforce memory and judgment. Additionally, he will receive the necessary structure and supervision necessary due to poor judgment and limited safety awareness. The Supported Living program will provide facility and community program activities to help restore prosocial behaviors and adaptive psychological functioning. Interaction guidelines will be developed

to enhance compliance, increase appropriate behaviors and develop adjustment strategies. These guidelines will be modified throughout Mr. Pack's program to address ongoing adjustment and/or behavioral issues.

As a component of our Supported Living program, our medical director, Clay Brashears, M.D. and Health Management Associates, will follow Mr. Pack. He will be provided routine medical management as appropriate. Additionally, a registered dietician will monitor his nutritional status and work with staff to ensure that Mr. Pack receives the appropriate diet and caloric intake.

Based on this assessment, it appears that Mr. Pack will continue to be dependent upon the care and assistance of others on an ongoing basis.

Here, the Timber Ridge services to Pack clearly fall within the definition of "nursing services." The assisted-living facility would tend to Pack, and provide Pack the care required due to his brain injury. The record demonstrates, and the parties agree, that Pack cannot be left alone, is not self directed, and needs cues to perform essentially all of his functions and activities. Without the cues, Pack cannot perform necessary daily responsibilities to care for himself, maintain a healthy life, and avoid serious medical intervention. These cues are tending to, ministering to, and providing nursing services to a brain-injured individual. The cues are not household tasks, or personal tasks, or cus-todial tasks; the cues are nursing services he requires to treat his brain injury.[2] Stated differently, without the injury, Pack would not need these cues.

Finally, we note that relying on *Pickens–Bond*, the employer contends under this court's precedent, the term nursing services does not include assistance with household and personal tasks which the claimant is unable to perform. We disagree with this interpretation of *Pickens–Bond*. We find that *Pickens–Bond* supports Pack's position, and does not negate it, as the employer contends. There, we allowed the following services as compensable nursing services: "helping [the claimant] to put on rubber pants he wears because of urinary incontinence, changing his bed and pajamas when he has a urinary or bowel 'accident' during the night, and perhaps, helping him dry after a bath." These same services are among or similar to the ones Pack has requested.

After a careful review of the record, we conclude that the Commission's findings and conclusions are not supported by substantial evidence. The services provided at Timber Ridge are part of an overall medical plan administered to Pack. Accordingly, the services will take care of, minister to, and tend to Pack as a brain-injured individual and qualify as nursing services under Ark.Code Ann. § 11–9–508.

Reversed and remanded; court of appeals' opinion vacated.

2. To the extent the employer suggests in its brief that *Pickens–Bond* holds that the cues Pack requires are assistance with personal tasks and noncompensable, we disagree. The court has not previously made a determination that the services Pack requires are noncompensable. In *Pickens–Bond*, we cited *Tirocchi v. United States Rubber Co.*, 101 R.I. 429, 224 A.2d 387 (1966), where the Rhode Island Supreme Court held that nursing services do not include assistance with house-hold and personal tasks that the claimant is unable to perform. However, *Tirocchi*, is distinguishable from the present case. In *Tirocchi*, the claimant sought the services of a worker in her home whose duties would admittedly be those of a combination housekeeper and personal maid. The court denied the request, finding that a "helper," at the employer's expense, as requested by the claimant, was not permissible.

⌐Special Justice VADA BERGER joins in this opinion.

Special Justice STEVE BELL joins in this opinion.

HART and HOOFMAN, JJ., not participating.